**Edward KECKEISEN, Appellant,**

v.

**INDEPENDENT SCHOOL DISTRICT 612 et al., Appellees.**

**No. 74–1326.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 13, 1974.

Decided Feb. 10, 1975.

Rehearing Denied Feb. 28, 1975.

restraining defendants from terminating his employment contract, reinstatement as principal of the Glenwood High School, and punitive damages. Appellant's employment contract was terminated pursuant to the School Board's policy, which provides in pertinent part:

It shall be the policy of the Board of Education not to employ the combination of husband and wife in the schools of the District where a conflict of interest could arise; said policy is to apply to the following:

1. Administrator—Teacher relationship

2. Husband and Wife combination in the same building

3. All other situations where a conflict of interest occurs.

Where the employment of a husband and wife in Independent School District 612 causes a conflict of interest to occur or should one of the above three conditions arise, that then either the husband or the wife shall resign. In the event neither the husband or the wife resigns within 10 days of notification of the conflict of interest or the occurrence of the above conditions, that then and in that event the Board of Education shall determine which position should be terminated according to statute.

Edward Keckeisen, the principal of Glenwood High School, was married to Lois Korbel, a physical education teacher at the school, in December 1972. Both were tenured teachers, having been employed three and six years, respectively, at their positions. The School Board's policy, the constitutionality of which is the subject of this appeal, was officially adopted by the Board on June 12, 1972, notice of its adoption being sent to all faculty members in the school district. The record indicates that the Board was apprised of the intention of Keckeisen and Korbel to marry at the time that it officially adopted the policy in question, but there is no allegation or evidence

William B. Korstad, Minneapolis, Minn., for appellant.

Norvell C. Callaghan and James F. Nelson, Winter & Nelson, Ltd., Glenwood, Minn., for appellees.

Before VAN OOSTERHOUT, Senior Circuit Judge, HEANEY, Circuit Judge, and MEREDITH, Chief District Judge.*

MEREDITH, Chief District Judge.

This is a civil rights action sought to be maintained under 42 U.S.C. §§ 1983 and 1985, in which appellant, Edward Keckeisen, seeks a permanent injunction

---

* JAMES H. MEREDITH, Chief Judge, Eastern District of Missouri, sitting by designation.

that the policy was invidiously tailored to fit the circumstance of their prospective marriage. In the record of the hearing that was held before the School Board on March 29, 1973, there was testimony by the Superintendent of Schools and past board members, dating back to 1945, that there had been a policy in the district not to hire married couples in the school system. There was testimony that on several occasions persons had not been hired, or that they had been asked to resign, because of the fact that they were married to someone who was already employed by the school district. It was also pointed out in that hearing that the district does use husbands or wives of faculty members as substitute teachers from time to time. This was explained as being necessary due to the small size of the community, and the scarcity of qualified persons who can be available on short notice. It is clear to the court that the problems of substitutes and those of permanent staff members are quite different and are distinguishable for purposes of the issue to be decided here.

Upon the marriage of Keckeisen and Korbel, the School Board notified the Keckeisens of the applicability of the policy to them, and in March 1973 a public hearing was held to determine whether the Keckeisens, or either of them, should be terminated in their employment. By resolution of the School Board, appellant was notified, on March 29, 1973, that his employment contract would not be renewed beyond the end of the school year, and, in fact, appellant has not been employed by appellee since the completion of the 1973 academic year.

Appellant then brought the matter before the federal district court, claiming that his Ninth Amendment right to privacy and Fourteenth Amendment right to equal protection of the laws had been violated. Chief Judge Devitt dismissed the matter, holding in a brief opinion that a cause of action was not stated, and, further, "that even if one were stated the school board's conflict of interest policy * * * is a permissible one under constitutional standards * * *."

In considering the constitutionality of appellees' policy, and particularly its application to Edward Keckeisen, it is instructive to note that appellees' alternatives were rather strictly limited by the setting of the events. Glenwood is a small town in which there is only one high school. There is an elementary school in Glenwood, but neither of the Keckeisens were certified, as required by Minnesota law, to teach at the elementary level; and the position of principal of the elementary school was filled by a tenured teacher. It was not possible, therefore, to transfer either of the Keckeisens to another school within the district, which would have mitigated the severity of the result reached pursuant to the Board's policy.

*Jurisdiction*

Appellees contend that the matter is not properly one of federal cognizance because appellant has not exhausted the remedies provided by Minnesota law and because appellees are not "persons" within the import of 42 U.S.C. §§ 1983 and 1985. This court finds, however, that appellant has properly stated a cause of action under 42 U.S.C. § 1983.

Although the states are given immunity by the Eleventh Amendment from the prosecution of civil claims, individuals and associations acting under color of state law are not immune to the sanctions of the Civil Rights Act and may be sued, unless it is clear to the court that the claim is actually a ruse by which personal jurisdiction over the state is sought to be exercised. *See* Whitner v. Davis, 410 F.2d 24 (9th Cir. 1969) (action dismissed as to state and college, but allowed to proceed against board of trustees); Porcelli v. Titus, 302 F.Supp. 726, 730 (D.N.J.1969), aff'd, 431 F.2d 1254 (3d Cir. 1970), cert. denied, 402 U.S. 944, 91 S.Ct. 1612, 29 L.Ed.2d 112 (1971); Miller v. Parsons, 313 F.Supp. 1150 (M.D. Pa.1970). *Cf.* Board of Trustees of Arkansas A & M College v. Davis, 396 F.2d 730 (8th Cir. 1968), cert. denied, 393 U.S.

962, 89 S.Ct. 401, 21 L.Ed.2d 375 (1968). Likewise, municipal corporations were not intended to be included as "persons" under § 1983, as appellees point out, but it would defeat the central intention of the Civil Rights Act to disallow actions against individuals employed by municipal corporations. Such is the holding of the Supreme Court in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), where it was held that individual police officers, but not the city itself, were subject to the sanctions of § 1983. This court, in affirming the district court in Brenden v. Independent School District 742, 477 F.2d 1292 (8th Cir. 1973), found school districts to be within the meaning of "persons" for the purposes of § 1983.

■ As to whether the present action is barred by appellant's decision not to pursue the matter in the state courts of Minnesota, it must be understood that appellant has alleged the violation of his federal constitutional rights. Appellees miss the mark entirely with their contention that school boards are vested with discretionary powers that should not be subjected to judicial scrutiny, for what is involved in the case at bar is not merely the wisdom of a school board's decision to terminate the services of a teacher, as in Scheelhaase v. Woodbury Central Community School District, 488 F.2d 237 (8th Cir. 1973). At issue in this case is the constitutionality of a policy of terminating teachers under certain circumstances because they are married. This is not, then, a simple case of contract law, but a case arising under the federal Constitution.[1]

As the Supreme Court stated in McNeese v. Board of Education, 373 U.S. 668, 672, 83 S.Ct. 1433, 1436, 10 L.Ed.2d 622 (1963):

We would defeat those purposes [of 42 U.S.C. 1983] if we held that assertion of a federal claim in a federal court must await an attempt to vindicate the same claim in a state court. The First Congress created federal courts as the chief—though not always the exclusive—tribunals for enforcement of federal rights.

*See also* Monroe v. Pape, *supra*.

### The Constitutional Claim

■ In Loving v. Virginia, 388 U.S. 1, 12, 87 S.Ct. 1817, 1824, 18 L.Ed.2d 1010 (1967), the Supreme Court held that:

The freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness by free men.

The case at bar is unlike *Loving* in a signally important respect, however. The policy in question here does not deny to people the right to marry; it only prohibits the employment of married couples in administrator-teacher situations.[2] The stated purpose of the rule is a laudatory one: preventing conflicts of interest and favoritism. What we have before us then is the state's interest in providing good education for its children—and we have that interest fully and directly before us because conflicts of interest in the administration of education are clearly subversive of the state's interest—and, on the other hand, a somewhat attenuated claim involving the right to marry. Were the right to marriage claim not so attenuated by the fact that marriage itself is not the subject of the School Board's policy—i. e., were the right more directly involved—then we should perhaps, reach a different result. Under the facts of this case, however, we are constrained to uphold the decision of the district court.

1. In *Scheelhaase,* on which appellees rely heavily in this regard, this court stated: " * * * in the absence of a tenure statute a local school board has the right to decline to employ or to re-employ any teacher for any reason or for no reason as long as such a decision is not violative of a specific constitutional right." 488 F.2d at 242. Clearly, the present case is inapposite *Scheelhaase* in that

*Scheelhaase* involved the non-constitutional right to keep one's job, while the constitutional right to marriage is involved here.

2. The portion of the School Board's policy dealing with the employment of husband-wife teams in the same building, where they are not in the administrator-teacher relationship, is not challenged on this appeal and is not affected by our holding in this case.

It is important to note that the record gives no indication that appellant's performance as principal of the high school was in any way unsatisfactory from the time of his marriage through the end of the school year. We are convinced that Keckeisen was, in fact, fair-minded in his administration of the school, but the policy of the School Board is quite naturally concerned not only with the actual administration of the school, but also with the effect of an apparently prejudiced arrangement on the morale of the other teachers. To put the matter more simply, the mere existence of the husband-wife/administrator-teacher situation is bound to have a deleterious effect on the morale of the faculty. We have no doubt that in many cases where husbands and wives are employed in supervisor-supervisee capacities, the married couple makes an exemplary effort to maintain fairness, but we cannot say that a policy based on the assumption that married couples are susceptible to the natural prejudices of their relationships is irrational, arbitrary or capricious. There was testimony at the school board hearing that the policy was implemented to avoid situations where a conflict of interest was likely to arise. The superintendent of the district testified that where a teacher is married to an administrator, under whose supervisory control he or she is working, there is a strong possibility of conflicts of interest becoming a problem in several areas. The superintendent of a neighboring district, called as an expert witness, concurred in this opinion. Such problem areas would include: evaluation of the teacher's performance by the administrator, disciplinary problems with students in the teacher's classes where the administrator might be called upon to decide a dispute between student and teacher, the disciplining of teachers themselves, the assignment of classrooms and extracurricular duties, recommendations for the purchase of supplies and equipment, and the assignment of school aides. There was testimony that the situation could, in light of the above-mentioned areas where a conflict could arise, create a morale problem among the other members of the faculty under the control of the administrator in question. The superintendent testified that there was some competition among faculty members in the areas of classroom assignments, extra duties, requisitioning supplies, and the assignment of school aides.

In light of these considerations, the court cannot say that the Board was clearly wrong in attempting to avoid conflicts before they arose. With so many areas where a conflict could occur, there is a strong possibility that an administrator, no matter how careful he might be, could unintentionally let his judgment be swayed by his close relationship with one of the teachers. It also could place the administrator in the position of having to defend his actions where normally he would not.

This court does not feel that where such definite possibilities of conflict of interest exist, the Board should be placed under a constitutional burden of having to wait until a conflict of interest becomes a problem situation before it can take any action. The law should not block legitimate measures taken to anticipate problems and avert them.

It must be noted that appellant did not offer any evidence at the hearing and he has failed to inform the court of any possible alternatives by which appellees might have served the state's interests in eliminating conflicts of interest. Such alternatives are by no means inconceivable, but in the absence of any showing as to what the School Board might have done short of terminating appellant, the court must be satisfied that no such alternatives exist. Had appellant showed some reasonable alternatives of accomplishing the same result, this court might have found the incidental burden on the right to marriage to be, in balance, greater than the burden on the state.

Affirmed.