STATE DIVISION OF HUMAN RIGHTS, on Complaint of SUSAN HOWARTH, Petitioner, v VILLAGE OF SPENCERPORT, Respondent.

Fourth Department, December 12, 1980

**APPEARANCES OF COUNSEL**

*Ann Thacher Anderson (Alan J. Saks* of counsel), for petitioner.

*Robert L. Fraser* for respondent.

**OPINION OF THE COURT**

SIMONS, J.

This is an original proceeding pursuant to section 298 of the Executive Law in which the State Division of Human Rights seeks an order enforcing a prior determination of the Commissioner of Human Rights that the respondent village unlawfully discriminated against complainant Susan Howarth by discharging her from employment because of her marital status. In responding, the village has addressed the merits of the prior proceeding and the division contends that since the village failed to appeal the commissioner's order we are now foreclosed from reviewing it. That contention has been urged before and rejected by the

Court of Appeals (see dissenting opn *Matter of State Div. of Human Rights v Bystricky*, 36 AD2d 278, 281, affd 30 NY2d 322). Accordingly, we have reviewed the merits and although the points raised by the village do not warrant denial of the application and dismissal of the petition, we nevertheless grant that relief based upon our finding that as a matter of law complainant's discharge was not motivated by conduct proscribed by section 296 of the Executive Law.

In 1973 complainant was hired as a part-time secretary by the former Mayor of Spencerport. She continued her employment through two different village administrations until she was discharged on February 16, 1977. At the hearing, the village advanced a number of reasons for her discharge, but the commissioner found that she was fired because she was married to James Howarth and that, but for the controversy in the village over real property tax assessments and her husband's role in increasing them, she would have been continued in her employment.

Mr. Howarth was the Director of the Department of Taxation and Assessment of the Town of Ogden, the agency that established tax assessments for the town and also for the Village of Spencerport which was within the geographic boundaries of the town. In 1976 through 1977, he increased the assessments of several real properties in Ogden because of improvements made by the owners. Considerable public resentment followed and in January, 1977 Mr. Howarth was required to appear before the village board to explain the increases. He later appeared at a "heated" public hearing in February. Shortly after this hearing the Mayor discharged complainant and ultimately the village decided not to adopt the changes in assessment for village tax purposes. The evidence in the record discloses that at the time all this occurred, the Mayor was campaigning for re-election. He stated at the hearing that he found the employment of complainant "somewhat of an embarrassment" and that he had been urged by others to discharge her.

On this evidence, fully supported by the record and not seriously challenged by the village, the commissioner found that Susan Howarth was unlawfully discharged from her employment because of her marital status.

The Legislature has declared that the State has the responsibility to "assure that every individual within this state is afforded an equal opportunity to enjoy a full and productive life" and that equal opportunity for employment is basic to that enjoyment (Executive Law, §§ 290, 291; *Matter of City of Schenectady v State Div. of Human Rights*, 37 NY2d 421, 424; *State Div. of Human Rights v Kilian Mfg. Corp.*, 35 NY2d 201, 207). To that end, the Legislature enacted the Human Rights Law (Executive Law, art 15), created the Division of Human Rights to enforce it (Executive Law, § 293), and directed that the statute be construed liberally (Executive Law, § 300; *300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 183).

The underlying purpose of the Human Rights Law is to insure that decisions involving employment, housing and similar advantage rest upon individual qualifications and not be the product of prejudice or unlawful bias. The statute originally forbade discrimination based upon race, creed and national origin, but it soon became clear that there also existed widespread discriminatory practices based on sex, age, disability and marital status. Bias with respect to marital status was particularly evident in financial matters where women, because they were single, divorced or separated, or conversely because they were dependent on their husbands, frequently encountered difficulties in obtaining credit not similarly experienced by men. The Human Rights Law was amended to eliminate that discrimination in 1974 (L 1974, ch 173; Executive Law, § 296-a) and in 1975 the act was further amended to prohibit discrimination based upon marital status in employment and housing matters (L 1975, ch 803). Senator Smith, the sponsor of the amendment, stated that the amendment was intended to extend the jurisdiction of the Division of Human Rights to complaints of discrimination resulting "from sex, or from the status of divorced, separated, widowed or single persons, or from other status related to marriage" (NY Legis Ann, 1975, p 65).

The amendment has apparently not been interpreted by the courts, but typically it should be construed to prevent such practices as the refusal to employ married women or

to rent to single or divorced persons (see *Zahorian v Fitt Real Estate Agency*, 62 NJ 399) or the enactment of discriminatory rules such as those granting maternity leave to married teachers only (see *Leechburg Area School Dist. v Pennsylvania Human Relations Comm.*, 19 Pa Commw 614; see Sex Discrimination-Marital Status, Ann. 34 ALR Fed 648). A review of prior decisions is also helpful because even without a specific proscription against discrimination based upon marital status, it is apparent that the courts in the past had little difficulty granting appropriate relief when the discrimination was based upon the fact of marriage or some bias related to the complainant's spouse. In doing so, they reasoned that the acts were unlawful because motivated by proscribed considerations such as sex (e.g., *Matter of Sanbonmatsu v Boyer*, 45 AD2d 249 ["nepotism rule"]; see *Yuhas v Libbey-Owens-Ford Co.*, 562 F2d 496, cert den 435 US 934 ["no spouse rule"]; *Lansdale v Air Line Pilots Assn. Int.*, 430 F2d 1341; see Application of State Law to Sex Discrimination in Employment, Ann. 87 ALR3d 93; Sex Discrimination-Marital Status, Ann. 34 ALR Fed 648, 653), or race (e.g., *Holiday v Belle's Rest.*, 409 F Supp 904 [white waitress married to a black man discriminated against because of *her* race]; *Whitney v Greater N. Y. Corp. of Seventh-Day Adventists*, 401 F Supp 1363 [white woman subject to discrimination because of her social relationship with a black man]; see Civil Rights-Indirect Discrimination, Ann. 35 ALR3d 859).

These illustrations of unlawful discriminatory practices fit easily within the provisions of the new statute and permit distillation of a general working premise for use in deciding this case which is consistent with the expressed legislative purpose. Before the Division of Human Rights may exercise jurisdiction over a claim of unlawful discrimination based upon marital status, that status must do more than furnish a link to the person whose conduct motivates the party charged. The complainant's status must be the cause of the unlawful act, either because of the condition of marriage, singleness or whatever, or because the party charged is motivated by some proscribed bias toward the spouse.

Neither of these considerations motivated the village.

Complainant was not discharged because of her marital status or because of the race, creed or other prohibited consideration related to her husband. She was discharged because of her husband's actions as assessor.* Her discharge was not based upon marital status because discharge was just as certain whether the assessor was her husband, or her brother, father or some other relative. The action of the village in firing complainant may or may not have been open to challenge (see *Branti v Finkel*, 445 US 507), but the Division of Human Rights, as an administrative agency created by the Legislature may exercise only the powers granted to it (see *Matter of Peters v New York City Housing Auth.*, 307 NY 519; *Matter of Lyons v Prince*, 281 NY 557), and since the statute does not expressly or by necessary implication grant it jurisdiction to sanction the village for discharging complainant as an act of political retaliation against her husband, the petition must be dismissed.

The application should be denied and the petition dismissed.

CARDAMONE, J. P., HANCOCK, JR., CALLAHAN and MOULE, JJ., concur.

Application unanimously denied, with costs, and petition dismissed.

---

* An interesting construction of the amendment is suggested in a letter from counsel of the State Racing and Wagering Board to the Governor's counsel, contained in the bill jacket, it was noted that board rules provided that suspension or exclusion of a licensee automatically results in suspension or exclusion of the spouse. The reason, obvious enough, was that licensees with criminal records, particularly gambling records, often own horses in their spouse's name and participate fully in racing despite their criminal record. Counsel noted that despite the reasonableness of such rules, the amendment could be construed to prohibit them.