The CITY OF MINNEAPOLIS, Respondent,

v.

STATE of Minnesota, by William L. WILSON, Commissioner, Department of Human Rights, Appellant.

No. 81–272.

Supreme Court of Minnesota.

Sept. 25, 1981.

Warren Spannaus, Atty. Gen., and Richard L. Varco, Jr., Sp. Asst. Atty. Gen., St. Paul, for appellant.

Robert Alfton, City Atty., and Allen Hyatt, Asst. City Atty., Minneapolis, for respondent.

SCOTT, Justice.

This is a race discrimination case. The appeal, by the State, Department of Human Rights, is from an order of the district court, which reversed part of an order by the Human Rights Commission hearing examiner. We reverse those parts of the district court's order which are challenged on this appeal.

This case arose from an incident which occurred early on March 24, 1974, in north Minneapolis as police tried to take a white man, Kenneth Ruegemer, into custody for a hit-and-run accident. The incident occurred at the scene of an interracial party, and a number of guests, who saw that Mr. Ruegemer was injured but who did not know that the injuries were caused in the accident, rashly concluded that the officers had caused the injuries. A crowd soon formed around the squad car and some of the people began to direct derogatory remarks at the police. When one of the people at the party, Kenneth Ruegemer's black stepson, Alfred Dyer, struck an officer, a scuffle ensued. During the pursuit of Alfred's brother, Reese, who kicked an officer, some police officers used excessive force and also called Reese a "nigger." Other officers called people at the party "niggers," "dirty niggers," "fucking niggers," and "nigger lovers."

While this was happening, Michael Friedman, who is white, called a friend who was head of the police training program and asked him what to do. After talking with this officer, he took a pencil and paper and started taking down badge numbers of the police in the house. One officer, Michael Garley, covered his badge and, when Friedman asked to see it, shoved against Friedman, stood up on a chair, and said loudly, "I'll show you my badge number, you nigger lover." This remark against Friedman is the subject of one of the two issues raised on appeal, because the district court ruled that the anti-discrimination act does not prohibit discrimination on the basis of what he termed "race association."

Meanwhile, outside, Kenneth Ruegemer's son, Michael, who is white and who had not participated in the confrontation with police, was standing on the sidewalk away from the commotion connected with the arrest of his father when he was struck in the back of the head with a club. The hearing examiner found that an unidentified police officer had delivered this blow. The district court's determination that this finding was without evidentiary support in the record is the subject of the other issue raised on appeal.

The district court left untouched the hearing examiner's determination that the police officers discriminated against Reese Dyer because of race and, accordingly, that part of the district court's decision, which awarded Dyer $500 in punitive damages, is not challenged by the Department of Human Rights on appeal.

■ 1. The first issue on appeal is whether the district court correctly concluded that the statute does not prohibit discrimination on the basis of "race association."

The subdivision of the statute prohibiting discrimination by police and other public servants speaks of discrimination because of "race, color, creed, religion, national origin, disability, sex or status with regard to public assistance." Minn.Stat. § 363.03, subd. 4 (1980).

The district court in effect interpreted this statute as prohibiting police calling a black person a "nigger" but not as prohibiting police calling a white person a "nigger lover."

That the statute prohibits police calling a black person a "nigger" is made clear by our decision in *City of Minneapolis v. Richardson*, 307 Minn. 80, 239 N.W.2d 197 (1976). We conclude that the statute also prohibits police calling a white person a "nigger lover." Here, when the officer called Friedman a "nigger lover," the officer in effect was mistreating him not because he was black but because of his friendship with and association with blacks. In our opinion, this conduct falls in the same category as calling someone a "nigger." Support for this interpretation of the statute is found in Auerbach, *The 1967 Amendment to the Minnesota State Act Against Discrimination and the Uniform Law Commissioners' Model Anti-Discrimination Act: A Comparative Analysis and Evaluation*, 52 Minn.L.Rev. 231, 257–58, 265, 266, 267 (1967), which argues that discrimination against a person is forbidden not only because of *that* person's race, etc., but also because of the race, etc., of another individual, such as his wife or child.

2. The only other issue raised is whether there was evidentiary support for the hearing examiner's finding that an unidentified police officer assaulted Michael Ruegemer. We conclude that there was sufficient evidence.

Michael Ruegemer testified that when the confrontation started the police ordered everyone around the squad car to go up on the sidewalk. He testified that he proceeded to the sidewalk and was heading towards the house when he was struck from behind. He testified that immediately after he was struck he turned and was sprayed in the face by a blond police officer.

Although there was no direct evidence that it was an officer who struck him, there was strong circumstantial evidence supporting the inference that an officer did it. There were two groups of people, and it is highly unlikely that one of his friends, rather than a police officer, struck him. Further, he testified that he was sprayed with mace by an officer immediately after he was hit. This evidence established a separate assault by the officer and strongly supported the inference that it was the officer who struck Ruegemer also.

Reversed.