**Lynne E. CYBYSKE, Appellant,**

v.

**INDEPENDENT SCHOOL DISTRICT NO. 196, ROSEMOUNT–APPLE VALLEY, Minnesota, et al., Respondents.**

No. C9–83–593.

Supreme Court of Minnesota.

April 6, 1984.

---

Mark P. Wine and Kathleen Hvass Sanberg, Minneapolis, for appellant.

James E. Knutson and Thomas M. Sipkins, St. Paul, for respondents.

SIMONETT, Justice.

The plaintiff teacher claims she was not hired by the defendant school district because of "marital status" discrimination and in violation of her constitutional rights. The trial court granted summary judgment to the school district. We reverse dismissal of the constitutional claim for deprivation of the right to freedom of association but otherwise affirm.

Plaintiff-appellant Lynne E. Cybyske was hired by defendant-respondent Independent School District No. 196 (Rosemount-Apple Valley) as a long-term substitute teacher for the 1979–80 school year, teaching art and fifth grade at the Westview Elementary School. When this job expired in June of 1980, Lynne applied for another teaching position that was open in the Rosemount-Apple Valley system, and had an apparently favorable initial interview for the position of fifth grade teacher at the Diamond Path Elementary School. Lynne, however, did not get the job. Instead, the school district hired another woman for the position, allegedly on the grounds the other applicant had a stronger background in art and appeared to be more student-oriented.

Lynne then sued the school district. She claimed that the reason she was not hired was because she was married to Daniel Cybyske, and that the school district did

not like her husband's "pro-teacher" views. In the spring of 1979, before Lynne had been hired for the substitute teaching position, her husband Daniel had been elected a member of the school board of the neighboring Burnsville School District. Apparently Daniel had been elected with strong teacher support in the Burnsville district and, as a school board member, became a vocal, controversial advocate for "a bigger voice" for teachers in school district decisionmaking. While a school board member, Daniel was paid by the Minnesota Education Association to conduct two seminars for teachers on how to elect pro-teacher candidates to school boards.

Plaintiff Lynne Cybyske's complaint against the Rosemount-Apple Valley School District and three of its administrators alleged discrimination on the basis of marital status in violation of the Minnesota Human Rights Act, Minn.Stat. §§ 363.01–.14 (1982). She also alleged that the discrimination infringed on her rights to freedom of association and freedom of choice in her marital relationship, in violation of 42 U.S.C. § 1983 and the first and fourteenth amendments to the Federal Constitution. Extensive discovery followed the filing of the complaint. In November 1982, the trial court heard defendants' motion for summary judgment. At that time Lynne moved to amend her complaint to add her husband Daniel as an additional party plaintiff to include his claim for violation of his first amendment right to free speech. The trial court denied this motion to amend, and it granted the summary judgment motion. This appeal follows.

The trial court granted summary judgment on the grounds that there were no genuine issues of material fact and that plaintiff's complaint had "failed to allege actionable marital status discrimination under either State or Federal law." Clearly, there was a genuine factual dispute as to whether plaintiff had not been hired because her husband entertained political views at odds with the employer school district. Consequently, the issues presented here are: Assuming plaintiff's version of the facts is correct, does refusal of a school district to hire a teacher because of her husband's pro-teacher attitudes constitute marital status discrimination under the Minnesota Human Rights Act? Secondly, does such refusal violate plaintiff's marital rights or freedom of speech and association under the Federal Constitution? Other issues raised by plaintiff-appellant are whether summary judgment was premature and whether it was error to deny amendment of her complaint to include the husband's claim.

I.

We consider first plaintiff's claim under our Human Rights Act. Minn.Stat. § 363.-03, subd. 1 (1982), reads in part:

> Except when based on a bona fide occupational qualification, it is an unfair employment practice:
>
> ⁕ ⁕ ⁕ ⁕ ⁕ ⁕
>
> (2) For an employer, because of race, color, creed, religion, national origin, sex, *marital status*, status with regard to public assistance, membership or activity in a local commission, disability, or age,
>
> (a) to refuse to hire or to maintain a system of employment which unreasonably excludes a person seeking employment; or
>
> ⁕ ⁕ ⁕ ⁕ ⁕ ⁕
>
> (c) to discriminate against a person with respect to his hire, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment.

(Emphasis added.)

■ While "marital status" is not a protected class under Title VII,[1] it is included in many state human rights acts. Some states have construed the term narrowly, holding that it refers to the status of the job applicant, namely, whether that person is single, married, separated, divorced, or

---

**1.** Federal Civil Rights Act of 1964, tit. VII, § 701, Pub.L. No. 88–352, 78 Stat. 241, 253–55 (codified as amended, 42 U.S.C. § 2000e (1976)).

widowed.[2] Thus refusal to hire a person because that person is married would be unlawful discrimination. Other states have construed the term "marital status" more broadly, holding that it also encompasses the identity or situation of the job applicant's spouse.[3] Under this view, an employer may not discriminate because of who the applicant's spouse is or what that spouse does. This court adopted a broad construction of marital status in *Kraft, Inc. v. State*, 284 N.W.2d 386 (Minn.1979). There we held that a company rule prohibiting the full-time hiring of more than one member of an immediate family was unlawful marital status discrimination under our Human Rights Act. We acknowledged we were giving a broad interpretation to marital status, stating:

> We reject the view that "marital status," while it denotes the fact that one is or is not married, does not embrace *the identity or situation of one's spouse.* Since respondent does employ married, single and divorced individuals, to hold otherwise would condone discrimination against a portion of a protected class, i.e., job applicants already married to full-time Kraft employees. [Citations omitted.] To do so would ignore the broad prohibition against arbitrary classifications embodied in the Human Rights Act and would elevate form over substance.

284 N.W.2d at 388 (emphasis added).

In *Kraft,* we held, absent a bona fide occupation qualification, that the employer could not discriminate against a job applicant because of what his or her spouse was doing—which in *Kraft* was working full time for the same employer. The question in this case is whether that holding should be extended to prohibit discrimination against the plaintiff job applicant because of what her spouse was doing, namely, advocating "disloyal" pro-teacher views while a board member of another school district.

In other words, is it "marital status" discrimination under our Act to retaliate against one spouse because of the political views or associations of the other spouse? The school district answers no, relying on *State Division of Human Rights ex rel. Howarth v. Village of Spencerport*, 78 A.D.2d 50, 434 N.Y.S.2d 52 (1980). There the mayor fired his secretary because of public dissatisfaction with the secretary's husband, the tax assessor, who had made unpopular tax assessments. The lower New York Appellate Court pointed out that it was just as likely the secretary would have been fired if the tax assessor had been her father, brother, or other relative. In other words, the New York court reasoned the plaintiff's claim did not arise from marital status but from political retaliation. It should be noted, however, that New York is committed to the narrow view of the term marital status as referring only to the condition of the employee being married. *In re Manhattan Pizza Hut, Inc. v. New York State Human Rights Appeal Board*, 51 N.Y.2d 506, 415 N.E.2d 950, 434 N.Y.S.2d 961 (1980) (upholding an anti-nepotism rule).

In *Kraft* we said that marital status includes the "identity or situation" of one's spouse. We did not, however, elaborate on what was meant by "identity or situation." Human nature being what it is, people have their likes and dislikes. An employer may dislike an employee's spouse for a variety of reasons, but it seems unlikely the legislature intended any kind of disliking to give

**2.** *E.g., Prince George's County v. Greenbelt Homes, Inc.*, 49 Md.App. 314, 431 A.2d 745 (1981) (refusal to permit unmarried couple to live in a cooperative housing development was not marital status discrimination); *Thomson v. Sanborn's Motor Express, Inc.*, 154 N.J.Super. 555, 382 A.2d 53 (App.Div.1977) (employer's anti-nepotism rule was not marital status discrimination); *In re Manhattan Pizza Hut, Inc. v. New York State Human Rights Appeal Board,* 51 N.Y.2d 506, 415 N.E.2d 950, 434 N.Y.S.2d 961 (1980) (anti-nepotism rule was not marital status discrimination).

**3.** *E.g., Thompson v. Board of Trustees*, Mont., 627 P.2d 1229 (1981) (anti-nepotism rule invalid); *Washington Water Power Co. v. Washington State Human Rights Commission*, 91 Wash.2d 62, 586 P.2d 1149 (1978).

rise always to a discrimination lawsuit.[4] It is significant, for example, that section 363.03, subd. 1, does not prohibit discrimination on the basis of political beliefs or status, although it does proscribe discrimination for creed or religion.[5]

■ If the question before us is whether the "political status" of one's spouse is protected under our Human Rights Act, the answer is no. Plaintiff-appellant seeks to evade this result by rephrasing the question. She argues that she did not get the teaching job simply because she was married to Daniel Cybyske; that the discrimination lies not in the unpopularity of her husband with the defendant school district but in the fact that her husband's "identity" or "situation" is imputed to her. Since this imputation is based solely on the marriage relationship itself, there is marital status discrimination under the Act.

We can concede the plausibility of plaintiff's argument, but it proves too much. To adopt plaintiff's argument would mean that any employer bias or predilection towards a spouse which is imputed to the employee, whether of substance or not, would subject the employer to a lawsuit. We do not think the legislature had this in mind.

Nor do we think *Kraft* holds differently. *Kraft* quite properly struck down an anti-nepotism rule as marital status discrimination. The company rule provided that a person would not be hired where the applicant's spouse was already an employee. An anti-nepotism rule is just another way of saying that an employer refuses to hire a married couple. Put this way, the rule is a direct attack on the husband and wife as

an entity and is contrary to the "legislative judgment [that] reflects the protected status the institution of marriage enjoys in our society." *Kraft*, 284 N.W.2d at 388. Also, in *Kraft*, we said for the employer to employ others who were married, single, or divorced but not those married to a spouse already employed by the company, was an arbitrary classification. In our case here, however, no distinct invidious classification emerges.

■ We adhere to our broad construction of marital status as enunciated in *Kraft*; i.e., in determining whether marital status discrimination exists, the identity and situation of the spouse is an important factor. We apply this approach, however, in the context of construing a statute to effectuate legislative intent. The legislature did not intend to proscribe a particular political posture, whether of an employee or of the employee's spouse, in the Human Rights Act. Nor do we think the term marital status should be construed to include what the legislature excluded. Here the alleged immediate reason for the discrimination is not directed at the institution of marriage itself, at least not with the same directness and closeness as in *Kraft*. We hold, therefore, that plaintiff Lynne Cybyske does not have a cause of action for marital status discrimination under our Human Rights Act.

## II.

■ The next issue is whether appellant Lynne Cybyske has a cause of action under 42 U.S.C. § 1983 against the defendant school district and its administrators for

---

4. In *Marital Status Discrimination: An Amorphous Prohibition*, 54 Fla.B.J. 217 (1980), the author, John-Edward Alley, lists six areas where at least some courts have indicated a willingness to find marital status discrimination by employers: (a) where employees are required to be either single or married; (2) anti-nepotism rules; (3) refusal to hire unwed mothers; (4) refusal to hire women with dependents while hiring men with dependents; (5) the hiring of married couples only; and (6) requiring female employees to change their last names upon marriage.

We have found no case extending marital status discrimination to employees in a political retaliation setting.

5. Minn.Stat. § 363.03, subd. 1(2) (1982), also prohibits employment discrimination for "membership or activity in a local commission." "Local commission," however, is narrowly defined by statute to include only those agencies "created * * * for the purpose of dealing with discrimination * * *," Minn.Stat. § 363.01, subd. 24 (1982). It does not include membership on a neighboring school board.

infringement of her right to freedom of choice in marriage and to freedom of association under the first and fourteenth amendments to the Federal Constitution. We hold that plaintiff-appellant has, in the current posture of this case, established a constitutional claim sufficient to defeat defendants' motion for summary judgment.

■ While Lynne Cybyske's nonhiring was not based on any set rule or regulation, and though she had no property right to be hired by the school district, she may prevail if she can establish that the decision of the public employer not to hire her was made because of her exercise of constitutionally protected rights and freedoms. *See Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Burris v. Willis Independent School District, Inc.,* 713 F.2d 1087 (5th Cir.1983) (both cases involving nonrenewal of the contracts of untenured teachers).

The alleged deprivations in this case were to Lynne Cybyske's freedom of association and freedom of choice in marriage under the first and fourteenth amendments. These claims are in some respects similar to the claims in *Sullivan v. Meade Independent School District No. 101,* 530 F.2d 799 (8th Cir.1976). There a teacher was discharged midterm as incompetent to continue teaching because she insisted on cohabitating with a single man. The trial court dismissed her section 1983 action and, on appeal, the eighth circuit affirmed. The appellate court, however, acknowledged probable infringement of the teacher's rights of privacy and association, but at the same time recognized the state's vital concern in maintaining "a properly moral scholastic environment." 530 F.2d at 804, *quoting Andrews v. Drew Municipal Separate School District,* 507 F.2d 611, 614 (5th Cir.1975), *cert. dismissed,* 425 U.S. 559, 96 S.Ct. 1752, 48 L.Ed.2d 169 (1976). The eighth circuit explained that the teacher's rights were not absolute and when they conflicted with the state's legitimate concerns, "a balance must be struck." *Id.* at 804, *citing Pickering v. Board of Educa-*

*tion,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). The court, however, did not attempt to strike the balance; instead, it found a "good faith" exception to section 1983 liability of the school board under *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). The "good faith" exception applied in *Sullivan* was further explained and limited by the United States Supreme Court in *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), where it was held that a municipality could not assert the good faith of its officers as a defense where neither policy nor tradition at the time of the enactment of section 1983 justified such immunity. *See also Trotman v. Board of Trustees of Lincoln University,* 635 F.2d 216 (3d Cir.1980), *cert. denied,* 451 U.S. 986, 101 S.Ct. 2320, 68 L.Ed.2d 844 (1981).

■ If the *Sullivan* dictum has merit, it would seem that Lynne Cybyske could have an enforceable action against the school district, even assuming a good faith exception might exist to shield the district administrators. If the failure to hire Lynne was indeed based on her husband's membership and known opinions as a member of a neighboring school board, Lynne Cybyske's associational freedoms were thereby compromised. "The Constitution affords * * * a right of association with other persons for a variety of purposes." *Sullivan, supra,* 530 F.2d at 804 (citations omitted). Surely, the right to associate with another person for the purpose of marriage is a basic right. Where the public employer discriminates against a job applicant because the employer dislikes the activities of the applicant's spouse, particularly where that spouse is only exercising his or her first amendment rights in the performance of public service as a school board member, it would seem that the job applicant's associational freedoms have been impaired. *Cf. Elfbrandt v. Russell,* 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966) (loss of public employment for membership in Communist party violates freedom of political association). To avoid

"guilt by association," the association would have to be disavowed. If the nonhiring is based not on any imputation of views but rather in retaliation against the spouse of the job applicant, the attack on the job applicant's associational rights is only that much more evident. Of course, a teacher's associational freedom can be compromised in the school setting if outweighed by an appropriate concern of the public employer. *See, e.g., Givhan v. Western Line Consolidated School District,* 439 U.S. 410, 415 n. 4, 99 S.Ct. 693, 696 n. 4, 58 L.Ed.2d 619 (1979) (institutional efficiency); *Norbeck v. Davenport Community School District,* 545 F.2d 63 (8th Cir.1976), *cert. denied,* 431 U.S. 917, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977) (maintaining discipline and coworker harmony); *Sullivan, supra* (maintaining proper moral and scholastic environment). On the record before us, however, there is no indication that Daniel Cybyske's activities on the neighboring school board would have any impact on his wife's effectiveness as a teacher for the defendant Rosemount-Apple Valley School District.

As to the claimed infringement on freedom of choice in marriage, "[t]he freedom to marry has long been recognized as one of the vital personal rights essential to the orderly pursuit of happiness * * *." *Loving v. Virginia,* 388 U.S. 1, 12, 87 S.Ct. 1817, 1824, 18 L.Ed.2d 1010 (1967). In this case, the defendants' refusal to hire Lynne Cybyske did not deny her the right to marry; it did, however, allegedly discriminate against her because of her particular choice of marital partner. A similar challenge was raised in *Keckeisen v. Independent School District 612,* 509 F.2d 1062 (8th Cir.), *cert. denied,* 423 U.S. 833, 96 S.Ct. 57, 46 L.Ed.2d 51 (1975), where the eighth circuit upheld the validity of a school district's policy of not employing married couples in administrator-teacher situations. Balancing the "right to marriage" claim against the employer's concern to prevent conflicts of interest and favoritism, the eighth circuit concluded the school district's anti-nepotism rule was not an impermissible infringement on individual constitutional rights. The court noted, however, that

"[w]ere the right to marriage claim not so attenuated by the fact that marriage itself is not the subject of the School Board's policy—i.e., were the right more directly involved—then we should perhaps, reach a different result." *Id.* at 1065. In our case plaintiff's right-to-marriage claim is no more directly involved than it was in *Keckeisen,* but at the same time the strong offsetting public purpose for the employer's actions, which was present in *Keckeisen,* is missing here.

What plaintiff is really seeking is a "rights-in-marriage" constitutional claim. We see no need, the federal constitutional law being as undeveloped as it is, to establish, at least in this case, a new rights-in-marriage claim, and we decline to do so. To the extent there might be any such claim we think it is already merged in the constitutional freedom of association claim which we have here recognized.

 Plaintiff-appellant has made a sufficient showing that a genuine factual dispute exists as to whether her husband's activities were a "substantial" or "motivating" factor in her nonhiring by the school board, and at this stage of the proceedings there also appears to be a factual dispute as to whether the school district would not have hired plaintiff even in the absence of her husband's activities. *See Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). We hold, therefore, that the trial court erred in granting summary judgment on plaintiff's section 1983 claim for deprivation of her constitutional right of freedom of association.

### III.

Since we hold that one of plaintiff-appellant's claims survives defendants' summary judgment motion, that claim returns to the trial court for further proceedings, thus rendering moot appellant's further complaint that summary judgment was premature because her discovery was not completed.

■ Appellant Lynne Cybyske also claims the trial court committed error in denying the motion to amend her complaint to add her husband Michael as a party plaintiff to include his claim for infringement of his first amendment rights. Plaintiff delayed over a year after the filing of her complaint, until the eve of defendants' summary judgment motion, to make her motion to amend. Defendants argued lack of timeliness and prejudice in trying all claims together. We cannot say the trial court exceeded its discretion in denying the motion. We observe that Lynne Cybyske tries to bring her husband into the lawsuit by amending her own pleadings under Rule 15.01. Her husband did not move to intervene or to be joined as a party, nor is he here on appeal. We do not see how Lynne has standing here to assert Daniel's claim.

Affirmed in part and reversed in part.

WAHL, Justice (dissenting in part, concurring in part).

I cannot agree that plaintiff Lynne Cybyske does not have a cause of action for marital status discrimination under the Minnesota Human Rights Act. To so hold is to significantly narrow the broad construction we gave "marital status" discrimination in *Kraft, Inc. v. State*, 284 N.W.2d 386 (Minn.1979). We recognized in *Kraft* that "[b]y including marital status within the parameters of the Human Rights Act, the legislature clearly intended to outlaw arbitrary classifications relating to marriage." 284 N.W.2d at 388. We found further that, in acknowledging the fundamental nature of the marriage relationship in the Act, the legislature intended that an employer may differentiate on the basis of marital status only where a business necessity is compelling and overriding. *Id.* If, as we determined in *Kraft*, mere business convenience is an insufficient basis for differentiation, certainly bias against the "pro-teacher" views of one's spouse would be so.

The question is not, as the majority opinion suggests, "whether the 'political status' of one's spouse is protected under our Human Rights Act." The question is whether plaintiff teacher can be denied employment under that act because of the identity and situation of the man to whom she is married. The New York Court of Appeals chose to interpret marital status narrowly under the New York Human Rights Law by holding that marital status discrimination means only the status of being married, single, separated, divorced or widowed and does not look beyond the individual's conjugal state to embrace the identity or situation of the individual's spouse. *In re Manhattan Pizza Hut, Inc. v. New York State Human Rights Appeal Board*, 51 N.Y.2d 506, 511, 415 N.E.2d 950, 952, 434 N.Y.S.2d 961, 963 (1980). Thus, *State Division of Human Rights ex rel. Howarth v. Village of Spencerport*, 78 A.D.2d 50, 434 N.Y.S.2d 52 (1980), relied on by respondents, is irrelevant to our decision here.

In interpreting our own Human Rights Act, we rejected the view that "marital status" does not embrace the identity or situation of one's spouse. *Kraft*, 284 N.W.2d at 388. The four part-time employee plaintiffs in *Kraft* were denied full-time employment with that company not just because they were married but precisely because of who their husbands were, in that case, full-time employees of Kraft. We held this to be employment discrimination on the basis of marital status under the Human Rights Act. If, as plaintiff in this case alleges, she was denied employment as a teacher by defendant school district precisely because of who her husband was, a "pro-teacher" school board member in a neighboring district, this constitutes, under *Kraft*, employment discrimination on the basis of marital status. Nowhere in *Kraft* did we limit our holding to anti-nepotism employment policies. We upheld rather the broad prohibition of the Act against arbitrary classification.

We have consistently held that the remedial nature of the Minnesota Human Rights Act requires liberal construction of its terms. *See, e.g., City of Minneapolis v. State by Wilson*, 310 N.W.2d 485 (Minn. 1981) (holding "race" discrimination included discrimination for association with per-

sons of another race); *Continental Can Co. v. State,* 297 N.W.2d 241 (Minn.1980) (holding "sex" discrimination included employer inaction in face of sexually derogatory statements and verbal sexual advances directed at one employee by fellow employees); *City of Minneapolis v. Richardson,* 307 Minn. 80, 239 N.W.2d 197 (1976) (term "discriminate" as used in Human Rights Act means distinction in treatment of individuals based upon irrelevant or impermissible factors). Our continued adherence to a broad construction of "marital status" under the Act is not only required by *Kraft* but also furthers the Act's objective of encouraging all employers to base employment decisions on the merits of the individual applicant. This construction does not unnecessarily burden employers. An employer may legitimately establish certain requirements for its employees, "bona fide occupational qualifications," where those requirements are inherently required by the nature of the business. Minn.Stat. § 363.03, subd. 1 (1982).

The plaintiff here has stated a cause of action for marital status discrimination under the Minnesota Human Rights Act as well as for violation of her constitutional rights. I would reverse the grant of summary judgment and remand for trial on both claims.

YETKA, Justice (dissenting).

I join in the dissent of Justice Wahl.