**STATE of Minnesota, by Linda C. JOHNSON, Commissioner, Department of Human Rights, Relator,**

v.

**FLOYD WILD, INC., Respondent.**

No. C5–85–1714.

Court of Appeals of Minnesota.

March 18, 1986.

Review Denied May 22, 1986.

Hubert H. Humphrey, III, Atty. Gen., Mary J. Theisen, Sp. Asst. Atty. Gen., St. Paul, for relator.

Patrick J. Leary, Quarnstrom, Doering, Pederson, Leary & Murphy, Marshall, for respondent.

Heard, considered and decided by the court en banc, consisting of POPOVICH, C.J., and PARKER, FOLEY, SEDGWICK, FORSBERG, RANDALL and CRIPPEN, JJ.

## OPINION

POPOVICH, Chief Judge.

The Department of Human Rights appeals an administrative law judge's order concluding respondent Floyd Wild, Inc. did not discriminate against Janice Belsheim on the basis of her marital status. The Department contends the administrative law judge misinterpreted the law with respect to marital status discrimination. We affirm.

### FACTS

The facts as found by the administrative law judge are not in dispute.

Floyd Wild, Inc., a trucking firm, is a closely held family corporation with 523 shares of stock outstanding. Floyd Wild, the president and a director, owns 314 shares. His wife, Adeline Wild, is the secretary-treasurer and a director and owns 15 shares. His son, Lenny Wild, is a vice-president and director and owns 96 shares. His son, Dennis Wild, is a vice-president and director and owns 50 shares. A daughter is a director and owns 48 shares. Floyd Wild makes the decisions regarding the hiring and firing.

The company office is a small addition attached to Floyd and Adeline Wild's home where Floyd Wild spends much of his time. Dennis Wild works as the shop foreman. The repair shop where he works is located on the property and he goes to the office three to four times a day.

In 1972, Dennis Wild's wife, Janice Belsheim, began working part-time as a bookkeeper/secretary. Along with other members of the family she had authority to sign company checks. Her work was always more than satisfactory and she was told by her father-in-law she could work as many hours as she wanted. From January through July 1982, she worked approximately 17 hours per week. She occasionally helped Adeline Wild with "personal" activities such as decorating the Wild home. When she was terminated in August 1982, she was making $6.30 an hour. She did not receive any benefits.

In June 1982, Belsheim decided to dissolve her marriage. Belsheim and Dennis Wild initially attempted to divorce amicably but the proceedings became bitter. Belsheim moved out of the family home in September.

In early July, Dennis Wild had informed his father of the pending divorce. On July 14, Floyd Wild went to Belsheim's home, told her he loved her like a daughter and was proud of the job she was doing. Belsheim informed him that she intended to go through with the dissolution.

On July 19, Floyd Wild suggested to Belsheim that she and his son seek marriage counseling. Belsheim said she would not go, she intended to complete the dissolution and she wanted to continue working for the company after the dissolution. Floyd Wild said her continued employment would not work after the dissolution. Belsheim told him she did not think that he could legally fire her.

On July 20, Floyd Wild again asked Belsheim if she would seek marriage counseling. When she responded no, he revoked her check signing authority and told her if she was not going to seek marriage counseling she should look for a new job in two weeks. Belsheim wrote on her office calendar that August 3 would be her last day at work.

On July 21, Dennis Wild brought a note home to Belsheim written by his father. It said, in part:

> All I am asking is that if you and Dennis will seek counseling to try to work out a mutual agreement, you can keep on working through this period. If after this you cannot agree, we will negotiate a working arrangement on a different level of business agreement.

On July 27, Floyd Wild and his wife and Janice Belsheim's parents talked to Belsheim about the pending dissolution. Nothing was said about her employment. On July 28, Floyd Wild and Belsheim's father, John Belsheim, spoke to Belsheim at work and attempted to convince her to seek counseling. She stated she would not but felt she could still continue to work for Floyd Wild. Both Floyd Wild and John Belsheim said it would not be possible for Belsheim to continue working at the company after a dissolution.

On August 9, Belsheim began working for a realtor as an assistant office manager/secretary at $4.75 per hour which was later increased to $6.00 per hour. She remained with Floyd Wild, Inc. through August 19 in order to train the employee who was taking over her duties.

The dissolution was completed in January 1983. Belsheim filed a charge of discrimination. A hearing was held. The administrative law judge concluded Floyd Wild, Inc. is not exempt from the Minnesota Human Rights Act and it did not discriminate against Belsheim on the basis of marital status when it terminated her. The administrative law judge dismissed the complaint.

## ISSUE

Did Floyd Wild, Inc.'s decision to terminate Janice Belsheim's employment constitute marital status discrimination under the Minnesota Human Rights Act?

## ANALYSIS

 The administrative law judge's order constitutes a final decision of the Department of Human Rights. Minn.Stat. § 363.071, subd. 2 (1984). Judicial review of the Department's decision is governed by the Administrative Procedures Act, Minn.Stat. §§ 14.63–.69 (1984). *Id.* § 363.-072.

The Minnesota Human Rights Act provides:

> Except when based on a bona fide occupational qualification, it is an unfair employment practice:
>
> * * * * * *
>
> (2) For an employer, because of * * * marital status * * *
>
> * * * * * *
>
> (b) to discharge an employee; or

(c) to discriminate against a person with respect to his * * * terms, * * * conditions, * * * or privileges of employment.

Minn.Stat. § 363.03, subd. 1 (1984).

We note that although the exemptions contained in Minn.Stat. § 363.02, subd. 1 (1984) do not include a daughter-in-law and the administrative law judge did not apply the exemption clause, the preservation of the right of a family to operate in harmony its closely held business is an important and worthy goal. Marriage counseling may assist in "saving" a marriage, but it is also important in assisting the parties about to end a marriage to do so in an objective, positive way, avoiding enmity and bitterness.

The results of the pending bitter dissolution between Dennis Wild and Belsheim would intrude into the operation of this closely held family business where the members worked near each other and in the family home. Both Floyd Wild and Janice Belsheim's father told Belsheim it would be impossible for her to work at the company after the dissolution. Both were merely stating an obvious fact. Belsheim's continued presence would be a constant reminder of the bitter dissolution and family breakup. This is not a situation where an employee could be transferred to another work site to avoid personal contacts and continual reopening of wounds. Moreover, it is not a situation that the employer exacerbated. Floyd Wild in his note to Belsheim said he was willing to negotiate a working arrangement if she would seek counseling. She refused to seek counseling even though urged by her own father.

The administrative law judge indicated that Belsheim's termination did not occur because of her marital status but because of the bitter dissolution and the fact she was "leaving" the family. We agree with his reasoning as stated:

> The record shows that Janice Wild initially became employed with Respondent in part because she was a member of the Wild family. Janice was allowed to set her own work schedule and work as many hours as she wanted. When Ms.

Wild began her employment, the office was located in the Wild home basement. Since 1979, it was located in an attached "garage". Janice Wild would occasionally help Adeline Wild with "personal" activities and Floyd Wild testified that he loved Janice like a daughter. Floyd Wild testified additionally that he was trying to save the marriage for the sake of his grandchildren.

The record in this matter shows that the reason Janice Wild's check-signing privileges were revoked and she was terminated from employment was because of the embittered divorce proceeding and the fact she was "leaving" the family. To characterize these actions as marital status discrimination is only a skin-deep approach. Janice Wild was terminated months before her marital status actually changed due to the detrimental effect of the divorce proceedings on the family members. Respondent's actions were not aimed at marital status per se. Rather, they were the result of Ms. Wild's rejection of attempts to keep the family together. These actions by the Respondent do not fall within the parameters of the prohibitions contained in Minn.Stat. Ch. 363 because they were not aimed at the *institution* of marriage itself. *Cybyske v. Independent School District No. 196*, 347 N.W.2d 256, 261 (Minn.1984).

■ Floyd Wild was trying to adjust to a difficult situation in a practical way where he had two good individuals working in a close area and sharing a marital relationship about to end. The termination, which occurred before the marital dissolution, was based on a disagreement because of a personal relationship arising out of a specific marriage, not the marriage or marital status itself.

## DECISION

The administrative law judge correctly concluded Floyd Wild, Inc. did not discriminate on the basis of marital status.

Affirmed.

PARKER, FOLEY and SEDGWICK, JJ., dissent.

FOLEY, Judge (dissenting).

I vigorously dissent. This court may reverse a final decision of the Department of Human Rights if we find its findings, inferences, conclusions or decision are affected by error of law. Minn.Stat. § 14.69(d) (1984). The majority opinion is fatally flawed. The majority has in effect disregarded the corporate entity and created an issue, contrary to established rules as to scope of review. It is creating an additional exemption to the provisions of Minn.Stat. § 363.072 because Floyd Wild, Inc. is a closely held family business.

The administrative law judge found that Belsheim was an employee of Floyd Wild, Inc. and concluded that the corporation is not exempt from Minn.Stat. § 363.03, subd. 1 (1984). See Minn.Stat. § 363.02, subd. 1 (1984). He reasoned that the corporation is a separate legal entity from its shareholders and that he could not disregard the corporate entity and find that shareholder Floyd Wild was the employer. He further reasoned that, in any event, Floyd Wild was Belsheim's father-in-law and that relationship is not among those exempted by Minn.Stat. § 363.02, subd. 1(1)(a).

Floyd Wild, Inc. contends that under the circumstances of this case the corporation and its shareholders, specifically Floyd Wild and Dennis Wild should be considered as one. The majority implicitly accepts this argument.

The right of respondent to secure review of issues not included in the appeal filed by the appellant is governed by Minn.R.Civ. App.P. 106. 3 Magnuson, Herr and Haydock, *Minnesota Practice,* 250 (1985). "The rule is intended to apply to cases in which issues have been decided by the trial court adversely to respondent, but the respondent has not filed a separate appeal * * * because the adverse results are immaterial in light of the trial court's ultimate disposition of the case * * *." *Id.* Floyd Wild, Inc. did not file a notice of review and therefore this court should not have considered the issue it raised. *See DeLa Rosa v. DeLa Rosa,* 309 N.W.2d 755, 757 n. 5 (Minn.1981).

Furthermore, the majority disregards the corporate entity even though it employs approximately 35 people and there is no indication that the shareholders did not treat the corporation as a separate entity. It, in effect, allows the Wilds the benefits of the corporate status while allowing them to evade legislative restrictions because they are a family, nothing more.

The administrative law judge determined that Belsheim met her burden of making a prima facie showing of discrimination as required by *Hubbard v. United Press International, Inc.,* 330 N.W.2d 428, 442 (Minn.1983). Specifically he stated:

Complainant has shown that Janice Wild was a member of a protected class; that she was performing her job in a satisfactory manner; that her check-signing privileges were revoked due to the fact that she was seeking a divorce; and that she was terminated because [of] a decision to refuse marriage counseling and go ahead with divorce proceedings.

He also found that she trained another employee to take over her duties. However, he determined that Floyd Wild, Inc. did not discriminate on the basis of marital status since Belsheim was terminated because of the bitter divorce proceeding and the fact that she was "leaving" the family. Noting that Belsheim was terminated months before her status actually changed, the administrative law judge stated that the actions of Floyd Wild, Inc. were not aimed at her marital status but were the result of her rejection of attempts to keep the family together.

The Department contends that the administrative law judge misinterpreted the law with respect to marital status discrimination. I agree. The Minnesota Supreme Court has given a broad interpretation to marital status, holding that it applies not only to the status of an employee, e.g., single, married or divorced but also to the "identity or situation" of the individual's spouse. *Cybyske v. Independent School District No. 196,* 347 N.W.2d 256, 259–60, 261 (Minn.1984). A broad interpretation of marital status must also include the change

from one status to another. Indeed, in *Cybyske* the supreme court specifically listed "separated" as an example of marital status. *Id.* at 259.

In this case the administrative law judge stated "the record in this matter clearly shows Ms. Wild's continued employment with respondent was absolutely contingent upon her seeking marriage counselling to save the marriage," yet he determined that respondent's actions are not prohibited by Minn.Stat. § 363.03, subd. 1 because "they are not aimed at the institution of marriage itself". I find these holdings inconsistent.

In *Cybyske*, the supreme court sought to further refine the definition of marital status by asking whether the alleged immediate reason for the discrimination is directed toward the institution of marriage itself. *Cybyske*, 347 N.W.2d at 261. Making continued employment contingent upon marriage counseling aimed at saving the marriage is directed toward the institution of marriage. This is not a case where employment was contingent upon counseling because the divorce was affecting the employee's work. Floyd Wild wanted to save the marriage to keep his family together. Since Floyd Wild's interest was in preserving the marriage, his termination of Belsheim because she refused marriage counseling constitutes discrimination based on marital status.

The heart of the problem in this case is the close mixing of family and employment relationships. The administrative law judge decided that Floyd Wild, Inc. did not discriminate on the basis of marital status since Belsheim was terminated because of the bitter divorce proceeding and the fact that she was leaving the family. He seems to reason that when family relationships are the basis for the action taken, there is no discrimination. This reasoning is faulty in two respects. First, both the reasons given merely describe Belsheim's change in marital status. Second, the legislature specifically recognized a need for exemption to Minn.Stat. § 363.03, subd. 1 when close family relationships are involved and provided that the provisions of Minn.Stat.

§ 363.03, subd. 1 do not apply to the employment of any individual by his parent, grandparent, spouse, child, or grandchild. Minn.Stat. § 363.02, subd. 1(1)(a). Neither the administrative law judge nor this court can create additional exemptions.

Minnesota appellate courts are limited in their ability to effectuate legislative intent:

> When the words of a law in their application to an existing situation are clear and free of all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.

Minn.Stat. § 645.16 (1984).

If the statute is to be amended, then the legislature, under the traditional separation of powers doctrine, should legislate, and not this court. If the philosophy expressed by the majority opinion is permitted to stand as the law of Minnesota—in this enlightened age—then we shall witness a turning backward of the onward march of progress in the field of human and civil rights in this state. This should not be permitted to happen.

PARKER, Judge (dissenting).

I join in the dissent of Judge Foley.

SEDGWICK, Judge (dissenting).

I join in the dissent of Judge Foley.