**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-0373
A23-0621**

JayCee Cooper,
Respondent,

vs.

USA Powerlifting,
Appellant,

USA Powerlifting Minnesota,
Respondent on Related Appeal (A23-0373).

**Filed March 18, 2024
Affirmed in part, reversed in part, and remanded
Johnson, Judge
Concurring in part, dissenting in part, Frisch, Judge**

Ramsey County District Court
File No. 62-CV-21-211

Christy L. Hall, Jess Braverman, Sara Jane Baldwin, Gender Justice, St. Paul, Minnesota; and

David E. Schlesinger, Riley Palmer, Nichols Kaster, P.L.L.P., Minneapolis, Minnesota; and

Matthew A. Frank, Premo Frank P.L.L.C., Minneapolis, Minnesota (for respondent and cross-appellant JayCee Cooper)

Ansis V. Viksnins, Mark J. Carpenter, Mary Cate S. Cicero, Monroe Moxness Berg P.A., Minneapolis, Minnesota (for appellant USA Powerlifting and respondent on related appeal USA Powerlifting Minnesota)

Charles R. Shreffler, Shreffler Law Ltd., Lakeville, Minnesota; and

Kristine L. Brown (*pro hac vice*), Shreffler Law Ltd., Denver, Colorado (for *amici curiae* 83 Female Athletes, Sports Officials, and Parents of Female Athletes)

Jason Adkins, Minnesota Catholic Conference, St. Paul, Minnesota (for *amicus curiae* Minnesota Catholic Conference)

Stanley N. Zahorsky, Zahorsky Law Firm, Edina, Minnesota; and

William Bock, III (*pro hac vice*), Kroger, Gardis & Regas, L.L.P., Indianapolis, Indiana (for *amicus curiae* Independent Council on Women's Sport)

Keith Ellison, Attorney General, Rachel Bell-Munger, Assistant Attorney General, St. Paul, Minnesota (for *amicus curiae* Commissioner of Minnesota Department of Human Rights)

Philip A. Duran, Rainbow Health, St. Paul, Minnesota; and

David P. Brown (*pro hac vice*), Transgender Legal Defense & Education Fund, New York, New York (for *amici curiae* Group of Transgender Women Athletes)

Considered and decided by Frisch, Presiding Judge; Johnson, Judge; and Larkin, Judge.

## SYLLABUS

1.      The district court erred by granting plaintiff's motion for partial summary judgment and concluding that defendant is liable to plaintiff on her claims of discrimination based on sexual orientation in public accommodations and in business under the Minnesota Human Rights Act, Minn. Stat. §§ 363A.01-.44 (2018), because there are genuine issues of material fact as to whether defendant excluded plaintiff from the women's division of its weightlifting competitions because of her transgender status.

2.      The district court erred by granting plaintiff's motion for partial summary judgment and concluding that defendant is liable to plaintiff on her claims of discrimination based on sexual orientation and sex in business under the Minnesota Human Rights Act, Minn. Stat. §§ 363A.01-.44 (2018), because there are genuine issues of material fact as to

whether defendant excluded plaintiff from the women's division of its weightlifting competitions for a legitimate business purpose.

## OPINION

**JOHNSON**, Judge

JayCee Cooper is a transgender athlete. She was not allowed to compete in the women's division of powerlifting competitions sponsored by USA Powerlifting (USAPL). Cooper sued, asserting five discrimination claims under the Minnesota Human Rights Act. On cross-motions for summary judgment, the district court granted Cooper's motion for partial summary judgment on three claims, denied her motion with respect to one claim, granted a defense motion for summary judgment on one claim, and *sua sponte* enjoined USAPL from doing business in Minnesota. USAPL has appealed, and Cooper has cross-appealed.

In USAPL's consolidated appeals, we conclude that there are genuine issues of material fact with respect to Cooper's claims of discrimination based on sexual orientation (which is defined by statute to include transgender status). We also conclude that there are genuine issues of material fact with respect to USAPL's statutory legitimate-business-purpose defense to Cooper's claims of discrimination in business. Accordingly, we reverse the district court's grant of Cooper's motion for partial summary judgment on three claims and its orders for injunctive relief. In Cooper's cross-appeal, we conclude that there are no genuine issues of material fact on Cooper's claim of aiding and abetting discrimination and, accordingly, affirm the district court's grant of summary judgment on that claim. Therefore, we affirm in part, reverse in part, and remand for further proceedings.

## FACTS

USAPL is a nationwide organization that sponsors competitions in powerlifting, a strength-based sport in which participants compete in three events: squat, bench press, and deadlift. USAPL was organized in 1981 as The American Drug Free Powerlifting Association, Inc., and one of its core principles is that its competitors must be drug-free. It is a non-profit corporation, with its principal place of business in Alaska. It employs a president and six other employees, three of whom work remotely from other states. The organization has approximately 18,000 members and relies on local meet directors to organize local competitions.

Cooper is a transgender woman who resides in Minnesota. She participated in men's sports before transitioning in her 20s and changing her name in 2015 or 2016, when she was approximately 28 years old. She became interested in powerlifting in approximately 2018 and became a member of USAPL later that year.

In November 2018, Cooper submitted to USAPL an application for a therapeutic-use exemption (TUE) from USAPL's drug-free policy. She did so because she wished to compete in the women's division of USAPL competitions in Minnesota in January and February of 2019 while taking spironolactone to treat her gender dysphoria. Cooper's application initially was referred to USAPL's TUE committee, whose members voted to approve it. Cooper's application then was referred to USAPL's executive committee, which determined that Cooper should not be allowed to compete in the women's division.

The executive committee asked the chairperson of the TUE committee, a medical doctor, to communicate the organization's decision to Cooper. On December 5, 2018, the

committee chairperson sent Cooper an e-mail message, stating: "The TUE committee has reviewed your request for spironolactone. That request has been denied. Male-to-female transgenders are not allowed to compete as females in our static strength sport as it is a direct competitive advantage. This decision has been made at the IPF [International Powerlifting Federation] level." Cooper responded by asking for additional information about the decision and the IPF policy. After a few additional messages, the committee chairperson explained further by stating, "The fact that transgender male to female individuals have gone through male puberty confers an unfair competitive advantage over non-transgender females due to increased bone density and muscle mass from pubertal exposure to testosterone . . . ."

In January 2021, Cooper commenced this action against USAPL and a defendant described as USA Powerlifting Minnesota (USAPL-MN).[1] Her three-count complaint asserts multiple causes of action under the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363A.01-.44 (2018). In count 1, she alleges that USAPL discriminated against her based on both sex and sexual orientation in a place of public accommodations. *See* Minn. Stat. § 363A.11, subd. 1(a)(1). In count 2, she alleges that USAPL discriminated against her based on both sex and sexual orientation in business. *See* Minn. Stat. § 363A.17(3).

---

[1]The parties dispute whether an entity known as USA Powerlifting Minnesota actually exists. In the district court, USAPL's attorneys moved for summary judgment on the sole claim asserted against USAPL-MN, arguing, in part, that no such entity exists. The district court agreed and granted that part of USAPL's motion. Below we affirm that ruling. *See infra* part III. Nonetheless, the caption of this opinion reflects that USA Powerlifting Minnesota is a respondent with respect to Cooper's related appeal, consistent with the appellate rules and this court's general practice. *See* Minn. R. Civ. App. P. 143.01.

And in count 3, she alleges that USAPL-MN aided and abetted USAPL's alleged discriminatory acts. *See* Minn. Stat. § 363A.14(1). Cooper demanded a jury trial and requested multiple forms of relief, including a permanent injunction, a civil penalty, compensatory damages, treble damages, and punitive damages. *See* Minn. Stat. §§ 363A.29, subds. 3-5, .33, subd. 6.

In essence, Cooper has asserted five claims: (1) discrimination based on sexual orientation in a place of public accommodations; (2) discrimination based on sex in a place of public accommodations; (3) discrimination based on sexual orientation in business; (4) discrimination based on sex in business; and (5) aiding and abetting discrimination. Her claims of discrimination based on sexual orientation are, in essence, claims of discrimination based on her transgender status or gender identity because, at the time of the events that give rise to this case, "sexual orientation" was defined by the MHRA to include "having or being perceived as having a self-image or identity not traditionally associated with [one's] biological maleness or femaleness." *See* Minn. Stat. § 363A.03, subd. 44 (2018).

The parties engaged in discovery for approximately two years. In November 2022, the parties filed cross-motions for summary judgment. Cooper moved for partial summary judgment with respect to liability on her first, third, and fifth claims. In support of her motion, Cooper submitted voluminous evidence (including deposition transcripts and internal USAPL e-mail communications) concerning USAPL's decision to exclude her from competing in the women's division of its competitions. In her memorandum of law, she argued, among other things, that she is entitled to judgment as a matter of law on her

6

sexual-orientation claims because "there is no factual dispute as to whether an illegitimate factor, namely Ms. Cooper's membership in a protected class, actually motivated defendants' rejection of her application to compete."

Meanwhile, USAPL also moved for summary judgment on all of Cooper's claims. In support of the motion, USAPL submitted an affidavit of its president, who stated:

> The [USAPL] executive committee determined that [Cooper] should not be allowed to compete in the women's division because athletes who have gone through puberty as a male retain significant strength advantages over those who go through puberty as a female and hormone replacement therapy does not materially minimize the competitive advantage.

USAPL also submitted expert reports. A post-doctoral researcher in developmental biology identified a "non-exhaustive list of sexually dimorphic differences between males and females" and stated that "males are, on average, taller with wider shoulders, longer limbs and longer digits, . . . have larger and denser muscle mass, reduced fat mass, different distributions of muscle and fat and stiffer connective tissues, . . . higher amounts of haemoglobin, and larger hearts and lungs." She also stated, "These physical differences underpin functional differences in overall strength, lever proportions, force application, upper to lower body strength, and cardiovascular and respiratory function" that "confer superior athleticism." She stated further that, in powerlifting, males have, on average, a "35% advantage" in strength over females. Finally, she stated that, if a transgender woman engages in 12 months of testosterone-suppression treatment, she would be expected to have only a four-percent decrease in muscle mass and strength, which the researcher deemed statistically insignificant.

7

Similarly, a lecturer in clinical physiology, with a Ph.D. in sports science, stated, "Biological males outperform comparable biological females in powerlifting by at least 35%" and that the disparity is "almost entirely due to the superior muscle mass and strength associated with male physiology compared to female physiology." He also stated, "There is currently no scientific evidence that suppressing testosterone in transgender women negates the advantage in muscle mass and strength that biological males, which include transgender women, have over females." He further stated that "competitive fairness between males and females cannot be achieved with testosterone suppression" because of evidence that "resistance training can mitigate the already small losses in muscle mass and strength caused by testosterone suppression."

In its memorandum in support of its own motion, and in its memorandum in opposition to Cooper's motion, USAPL argued that it did not exclude Cooper from competition because of her sexual orientation (*i.e.*, transgender status) but, rather, because she had gone through puberty as a male and, thus, had natural "strength advantages" and "performance advantages" that gave her an unfair advantage over cisgender women athletes in the women's division.

On February 27, 2023, the district court filed a 46-page order on the parties' summary-judgment motions. The district court granted Cooper's motion for partial summary judgment with respect to liability on her first, third, and fourth claims. The district court concluded that Cooper's evidence is conclusive proof of discrimination based on both sexual orientation and sex. On Cooper's third and fourth claims, which allege discrimination in business, the district court granted her motion notwithstanding USAPL's

8

statutory defense of a legitimate business purpose. *See* Minn. Stat. § 363A.17(3). On Cooper's second claim, the district court denied her motion on the ground that genuine issues of material fact exist with respect to a statutory exemption for places of public accommodations that "restrict[] membership on an athletic team or in a program or event to participants of one sex if the restriction is necessary to preserve the unique character of the team, program, or event and it would not substantially reduce comparable athletic opportunities for the other sex." *See* Minn. Stat. § 363A.24, subd. 2. On Cooper's fifth claim, the district court denied her motion and granted USAPL's summary-judgment motion on the ground that USAPL-MN is not an entity or organization with "any separate existence or autonomy beyond USAPL." The district court denied USAPL's motion with respect to Cooper's first, second, third, and fourth claims.

In its February 27, 2023 summary-judgment order, the district court—on its own initiative—also ordered injunctive relief. Specifically, the district court ordered USAPL to "cease and desist from all unfair discriminatory practices in public accommodations because of sexual orientation" and to submit to the court a proposed policy concerning the participation of transgender athletes that complies with the MHRA, as determined by the district court. In April 2023, USAPL submitted a proposed policy that would allow a transgender woman to compete in USAPL's women's division if she declared her gender to be female, had conforming government identification, and maintained a testosterone level below a certain numerical level. On April 11, 2023, the district court held a hearing on USAPL's proposed policy. The district court ruled from the bench that the proposed policy does not comply with the MHRA. The district court orally ruled that USAPL "is

9

enjoined from holding any events in the state of Minnesota, competitive or otherwise" and "is similarly enjoined . . . from selling memberships to identified residents of the state of Minnesota" until USAPL submits a proposed policy that complies with the MHRA. Although the district court indicated its intention to file a written order providing for injunctive relief, it did not do so.

USAPL filed timely notices of appeal from the district court's February 27, 2023 written order and its April 11, 2023 oral order. USAPL's appeals, which have been consolidated, challenge the district court's summary-judgment rulings and grant of injunctive relief on Cooper's first, third, and fourth claims.[2] Cooper filed a notice of related appeal to challenge the district court's grant of USAPL's summary-judgment motion on her fifth claim. *See* Minn. R. Civ. App. P. 103.02, subd. 2. The district court's denial of both summary-judgment motions on Cooper's second claim is not at issue on appeal.

---

[2]USAPL's notices of appeal provide a basis for appellate jurisdiction despite the absence of a judgment because USAPL seeks relief from "an order which grants . . . an injunction." *See* Minn. R. Civ. App. P. 103.03(b). We have appellate jurisdiction over the district court's February 27, 2023 order to the extent that the district court *granted* Cooper's motion because we "may review any order affecting the order from which the appeal is taken." *See* Minn. R. Civ. App. P. 103.04. Our appellate jurisdiction does *not* extend to the district court's February 27, 2023 order to the extent that the district court *denied* USAPL's summary-judgment motion because an order denying summary judgment generally is not appealable, *see McGowan v. Our Savior's Lutheran Church*, 527 N.W.2d 830, 832 (Minn. 1995), and because the district court's denial of USAPL's motion does not support the order for an injunction, which is the original basis of the appeal, *see* Minn. R. Civ. App. P. 103.04; *Williams v. National Football League*, 794 N.W.2d 391, 394-95 (Minn. App. 2011), *rev. denied* (Minn. Apr. 27, 2011).

**ISSUES**

I.      Did the district court err by granting Cooper's partial-summary-judgment motion with respect to her first and third claims, which allege discrimination based on sexual orientation?

II.     Did the district court err by granting Cooper's partial-summary-judgment motion with respect to her third and fourth claims, which allege discrimination in business and for which USAPL asserts the statutory defense of a legitimate business purpose?

III.    Did the district court err by granting USAPL's summary-judgment motion with respect to Cooper's fifth claim, which alleges aiding and abetting discrimination?

IV.    Did the district court err by ordering injunctive relief?

**ANALYSIS**

The MHRA protects an individual's right to an "opportunity to obtain employment, housing, and other real estate, and full and equal utilization of public accommodations, public services, and educational institutions without . . . discrimination." Minn. Stat. § 363A.02, subd. 2.

In the context of public accommodations, the MHRA seeks to ensure that persons within the state are free from discrimination "because of race, color, creed, religion, national origin, sex, sexual orientation, and disability." Minn. Stat. § 363A.02, subd. 1(a)(3). To that end, the act provides, "It is an unfair discriminatory practice . . . to deny any person the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation because of race, color, creed, religion, disability, national origin, marital status, sexual orientation, or sex

11

. . . ." Minn. Stat. § 363A.11, subd. 1(a), 1(a)(1). Similarly, "in a trade or business or in the provision of a service," it is "an unfair discriminatory practice" for a person "to intentionally refuse to do business with, to refuse to contract with, or to discriminate in the basic terms, conditions, or performance of the contract because of a person's race, national origin, color, sex, sexual orientation, or disability, unless the alleged refusal or discrimination is because of a legitimate business purpose." Minn. Stat. § 363A.17, .17(3). Furthermore, it is unlawful for any person "intentionally to aid, abet, incite, compel, or coerce a person to engage in any of the practices forbidden by" the MHRA. Minn. Stat. § 363A.14(1).

The term "sexual orientation" is defined by the MHRA. Because this case is based on events occurring in 2018 and 2019, we apply the then-existing definition of sexual orientation, which states, in relevant part:

> "Sexual orientation" means having or being perceived as having an emotional, physical, or sexual attachment to another person without regard to the sex of that person or having or being perceived as having an orientation for such attachment, or *having or being perceived as having a self-image or identity not traditionally associated with one's biological maleness or femaleness*.

Minn. Stat. § 363A.03, subd. 44 (2018) (emphasis added). This definition includes two distinct concepts. For purposes of this case, we focus on the latter concept, which we have italicized above. We refer to the second concept in this opinion by the term "transgender status" while keeping in mind the specific language used in the statutory definition.[3]

---

[3]During its 2023 session, the legislature amended the definition of sexual orientation by deleting the second concept. *See* 2023 Minn. Laws ch. 52, art. 19, § 47, at 1150

The term "sex" is defined in the MHRA in a non-exhaustive way: "'Sex' includes, but is not limited to, pregnancy, childbirth, and disabilities related to pregnancy or childbirth." *Id.*, subd. 42.

A person may enforce the provisions of the MHRA in a civil action in district court. Minn. Stat. § 363A.33, subd. 1. To establish a defendant's liability for unlawful discrimination under the MHRA, a plaintiff must prove that the person's "protected characteristic actually motivated" the defendant's decision or action. *LaPoint v. Family Orthodontics, P.A.*, 892 N.W.2d 506, 514 (Minn. 2017) (quotation omitted).

We are reviewing a district court decision on cross-motions for summary judgment. A district court must grant a motion for summary judgment "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Minn. R. Civ. P. 56.01. A district court must view the evidence in the light most favorable to the nonmoving party. *Henry v. Independent Sch. Dist. No. 625*, 988 N.W.2d 868, 880 (Minn. 2023). A genuine issue of material fact exists if a rational trier of fact, considering the record as a whole, could find for the nonmoving party. *Frieler v. Carlson*

(codified at Minn. Stat. § 363A.03, subd. 44 (Supp. 2023)). In the same bill, the legislature added a definition of "gender identity," which states as follows: "'Gender identity' means a person's inherent sense of being a man, woman, both, or neither. A person's gender identity may or may not correspond to their assigned sex at birth or to their primary or secondary sex characteristics. A person's gender identity is not necessarily visible to others." 2023 Minn. Laws ch. 52, art. 19, § 48, at 1150 (codified at Minn. Stat. § 363A.03, subd. 50 (Supp. 2023)). In addition, the legislature made it unlawful to discriminate on the basis of gender identity in employment, housing and real property, public accommodations, public services, education, and business. *See* 2023 Minn. Laws ch. 52, art. 19, §§ 45, 52-61, 63-71, at 1149-50, 1152-61 (codified at Minn. Stat. §§ 363A.02, .08-.09, .11-.13, .15-.17 (Supp. 2023)).

*Mktg. Grp., Inc.*, 751 N.W.2d 558, 564 (Minn. 2008). This court applies a *de novo* standard of review to a district court's grant of a motion for summary judgment. *Henry*, 988 N.W.2d at 880.

## I. Sexual-Orientation Claims

We first consider USAPL's argument that the district court erred by granting Cooper's motion for partial summary judgment on her first and third claims, which allege discrimination based on sexual orientation (*i.e.*, transgender status) in a place of public accommodations and in business. The key question with respect to Cooper's first and third claims is whether her sexual orientation (*i.e.*, transgender status) actually motivated USAPL's decision to exclude her from the women's division of its competitions. *LaPoint*, 892 N.W.2d at 514. USAPL argues that the district court erred on the ground that there are genuine issues of material fact. USAPL contends that it excluded Cooper from the women's division of its competition for a non-discriminatory reason: that she has male physiology, which gives her "unmitigated strength advantages that would compromise principles of fair athletic competition." USAPL contends that it did not exclude Cooper because of her sexual orientation (*i.e.*, transgender status).[4]

---

[4]USAPL does not admit or concede that it excluded Cooper from the women's division of its competitions because of her sexual orientation (*i.e.*, transgender status). *See infra* at C/D-1, 2, 8. To the contrary, USAPL's brief clearly states, "USAPL determined Ms. Cooper should not compete in the women's division because of unmitigated strength advantages that would compromise principles of fair athletic competition. There is not a stitch of evidence in the summary judgment record that USAPL excluded Ms. Cooper from the women's division because of her gender identity." In addition, USAPL's brief states, "USAPL's communications to Ms. Cooper consistently stated that exclusion from the women's division was not because of her gender identity, but because of the inherent strength advantages enjoyed by powerlifters who have gone through male puberty,

## A.

The supreme court repeatedly has stated that summary-judgment motions in MHRA cases should be analyzed according to the *McDonnell Douglas* burden-shifting analysis if there is no direct evidence of discrimination. *Henry*, 988 N.W.2d at 883; *Hansen v. Robert Half Int'l, Inc.*, 813 N.W.2d 906, 918 (Minn. 2012); *Hoover v. Norwest Private Mortgage Banking*, 632 N.W.2d 534, 542 (Minn. 2001).

> Under this framework, a plaintiff must first make out a prima facie case of discrimination. Once established, the burden then shifts to the [defendant] to articulate a legitimate and nondiscriminatory reason for the adverse . . . action. The burden then shifts again to the plaintiff to put forward sufficient evidence to demonstrate that the [defendant's] proffered explanation was pretextual.

*Hansen*, 813 N.W.2d at 918 (citations omitted); *see also Aromashodu v. Swarovski N. Am. Ltd.*, 981 N.W.2d 791, 795-96 (Minn. App. 2022) (applying *McDonnell Douglas* in MHRA public-accommodations case).

The supreme court also has stated that the *McDonnell Douglas* analysis does not apply to a summary-judgment motion if the plaintiff relies on direct evidence of discrimination. *See Hansen*, 813 N.W.2d at 918; *Hoover*, 632 N.W.2d at 542. "Direct evidence establishes that . . . discrimination was purposeful, intentional or overt, such as where an employer announces he will not consider females for positions." *Hanson v.*

including herself." USAPL makes other such statements elsewhere in its brief. USAPL has consistently maintained that its decision was not motivated by Cooper's transgender status.

15

*Department of Nat. Res.*, 972 N.W.2d 362, 373 (Minn. 2022) (quotations and citations omitted) (applying *McDonnell Douglas* to claim arising under whistleblower act).

**B.**

In this case, the district court did not apply the *McDonnell Douglas* analysis because the district court deemed Cooper's evidence to be direct evidence of discrimination based on sexual orientation (*i.e.*, transgender status). USAPL contends that the district court erred in that reasoning. In response, Cooper contends that the district court correctly characterized her evidence as direct evidence, and correctly determined that USAPL is liable to her as a matter of law, on the ground that USAPL adopted and enforced "a facially discriminatory policy."

In support of that contention, Cooper cites only one opinion arising under the MHRA: *Minnesota Mining & Manufacturing Co. v. State*, 289 N.W.2d 396 (Minn. 1979) (*3M*). In *3M*, the defendant had a policy that corresponded exactly to a statutory prohibition in the MHRA. The defendant, an employer, had adopted an "income maintenance plan" by which it paid short-term disability benefits to absent employees unless the absence was due to a pregnancy. *Id.* at 398. The commissioner of human rights sued, alleging that the employer's policy violated an MHRA provision that made it unlawful for "'an employer . . . with respect to all employment related purposes, including receipt of benefits under fringe benefit programs, not to treat women affected by pregnancy, childbirth, or disabilities related to pregnancy or childbirth, the same as other persons who are not so affected but who are similar in their ability or inability to work.'" *Id.* (alteration in original) (quoting Minn. Stat. § 363.03, subd. 1(2), (5) (Supp. 1977)). In other words, the

16

employer's policy did precisely what the MHRA said an employer could not do: deny fringe benefits to employees because of pregnancy. In short, the employer's policy was a perfect match for a specific statutory prohibition in the MHRA. The supreme court stated that the employer's plan "obviously violates" the MHRA and described the employer's plan as "per se sex discrimination." *Id.* at 398-400. It appears that *3M* is the only MHRA case in which a defendant has been held to have engaged in *per se* discrimination.

Unlike *3M*, there is no provision in the MHRA that corresponds exactly to USAPL's exclusion of Cooper from the women's division of its powerlifting competitions. The MHRA prohibits discrimination based on sexual orientation (*i.e.*, transgender status), but it does not expressly and specifically prohibit a place of public accommodations or a business from excluding a transgender woman from the women's division of a strength-based athletic competition on the ground that she has male physiology, which gives her significant competitive advantages over cisgender women. The legislature could amend the MHRA to expressly and specifically prohibit such an action, but it has not done so. In the absence of such an amendment, USAPL's exclusion of Cooper from the women's division of its competition is neither *per se* discrimination, facially discriminatory, nor discrimination as a matter of law. USAPL's action is discrimination based on sexual orientation only if a fact-finder finds, as a matter of fact, that Cooper's transgender status actually motivated USAPL's decision. *See LaPoint*, 892 N.W.2d at 514.

That USAPL's reason for its decision is related to and intertwined with Cooper's transgender status does not make it a discriminatory reason. This point is illustrated by

17

two supreme court opinions interpreting the MHRA's prohibitions on discrimination based on sex and discrimination based on marital status.

In *LaPoint*, the plaintiff alleged discrimination based on sex, which is defined by the MHRA to include pregnancy. 892 N.W.2d at 508; *see also* Minn. Stat. § 363A.03, subd. 42. After being offered a job, the plaintiff simultaneously accepted the offer and informed the employer that she was pregnant. *Id.* The employer withdrew the job offer one or two days later. *Id.* at 509. After a court trial, the district court entered judgment for the defendant based on findings that the defendant was motivated not by the mere fact of the plaintiff's pregnancy but, rather, by the employer's concern about the likely disruption arising from a long maternity leave after the plaintiff gave birth. *Id.* at 510-11. On appeal, the supreme court noted the court of appeals' statement that the defendant's reason for its decision (the length of the maternity leave) was "*very closely related to LaPoint's pregnancy.*" *Id.* at 512 (emphasis added). But the supreme court rejected the plaintiff's argument that the evidence "compel[led] a finding" of discrimination and deferred to the district court's finding that the defendant was not motivated by the plaintiff's pregnancy. *Id.* at 516-17.[5] The *LaPoint* opinion demonstrates that a defendant can make a decision for a non-discriminatory reason (the length of a maternity leave following a pregnancy) that is closely related to a discriminatory reason (pregnancy).

---

[5]The supreme court reversed and remanded for the limited purpose of allowing the district court to clarify whether it would have made the same finding with a proper understanding of the relevance of a discriminatory animus or hostility toward pregnancy. *LaPoint*, 892 N.W.2d at 517-18.

Similarly, in *Cybyske v. Independent School District No. 196*, 347 N.W.2d 256 (Minn. 1984), the plaintiff alleged discrimination based on marital status. *Id.* at 258. She claimed that she was not hired for a job with a school district because her husband was "a vocal, controversial advocate" for teachers. *Id.* at 258-59. On appeal from a grant of summary judgment in favor of the defendant, the supreme court reasoned that the defendant was motivated not by the plaintiff's marital status but, rather, by her husband's "identity or situation," *i.e.*, "who the applicant's spouse is or what that spouse does." *Id.* at 260-61. The *Cybyske* opinion also demonstrates that a defendant can make a decision for a non-discriminatory reason (a spouse's outspokenness) that is closely related to a discriminatory reason (marital status).[6]

The *LaPoint* and *Cybyske* opinions show that USAPL's reason for its decision is not direct evidence of discrimination based on sexual orientation (*i.e.*, transgender status), even though the reason is closely related to Cooper's protected status. There is evidence that USAPL excluded Cooper from the women's division of its competitions because she experienced puberty as a male, which gives her a competitive advantage over cisgender women. That reason is related to, but not the same as, Cooper's protected transgender status. Indeed, the distinction between Cooper's protected status and USAPL's reason for

---

[6]The dissenting opinion cites *Kraft, Inc. v. State*, 284 N.W.2d 386 (Minn. 1979), for the general proposition that the MHRA forbids the use of a protected class as a criterion. *See infra* C/D-3. But the "broad" holding in *Kraft* was narrowed in *Cybyske*, which drew a distinction between marital status itself and a spouse's "particular political posture." *See Cybyske*, 347 N.W.2d at 260-61. After *Cybyske*, the legislature amended the MHRA's definition of "marital status" to include, in the context of employment, "the identity, situation, actions, or beliefs of a spouse or former spouse." 1988 Minn. Laws ch. 660, § 1, at 918 (now codified at Minn. Stat. § 363A.03, subd. 24 (2022)).

19

its decision is embedded within the MHRA's definition of sexual orientation, which recognizes that a person's "self-image or identity" may be different from the person's "biological maleness or femaleness." *See* Minn. Stat. § 363A.03, subd. 44 (2018). Cooper's evidence is capable of proving unlawful discrimination based on sexual orientation (*i.e.*, transgender status) only if a fact-finder finds, as a matter of fact, that Cooper's transgender status (rather than her male physiology) actually motivated USAPL's decision.

Thus, Cooper does not rely on direct evidence of discrimination based on sexual orientation (*i.e.*, transgender status).

## C.

Because Cooper relies on circumstantial evidence of discrimination based on sexual orientation (*i.e.*, transgender status), we apply the *McDonnell Douglas* analysis. *See Henry*, 988 N.W.2d at 883; *Hanson*, 972 N.W.2d at 373; *Hansen*, 813 N.W.2d at 918; *Hoover*, 632 N.W.2d at 542.

## 1.

At the first step of the *McDonnell Douglas* analysis, the plaintiff must make out a *prima facie* case of discrimination. *Hansen*, 813 N.W.2d at 918.

"To establish a prima facie case of public-accommodation discrimination under the MHRA, a party must demonstrate that (1) the party is a member of a protected class, (2) the place of public accommodation treated the party differently, and (3) the different treatment was because of the party's membership in a protected class." *Aromashodu*, 981 N.W.2d at 796 (citing *Monson v. Rochester Athletic Club*, 759 N.W.2d 60, 63 (Minn. App.

20

2009), *rev. denied* (Minn. Mar. 17, 2009)). "[T]he evidence needed for a [plaintiff] to shift the burden to an alleged discriminator is not onerous." *Id.* A plaintiff makes out a *prima facie* case of discrimination if the evidence, when viewed in the light most favorable to the plaintiff, would support a finding that the plaintiff has proved the elements of her claim. *Henry*, 988 N.W.2d at 884.

The circumstantial evidence on which Cooper relies, when viewed in a light most favorable to her, is sufficient to allow a fact-finder to draw inferences and thereby find that USAPL excluded Cooper from its competitions because of her sexual orientation (*i.e.*, transgender status). Thus, Cooper has established a *prima facie* case.

**2.**

At the second step of the *McDonnell Douglas* analysis, the burden shifts to the defendant "to articulate a legitimate and nondiscriminatory reason for the adverse . . . action." *Hansen*, 813 N.W.2d at 918.

USAPL contends that it excluded Cooper from the women's division of its competitions for a legitimate, non-discriminatory reason: that she has male physiology, which would give her an unfair competitive advantage over cisgender women. USAPL submitted evidence in support of this argument, including an affidavit of its president, who stated that USAPL's executive committee "determined that [Cooper] should not be allowed to compete in the women's division because athletes who have gone through puberty as a male retain significant strength advantages over those who go through puberty as a female and hormone replacement therapy does not materially minimize the competitive advantage." The president's affidavit is corroborated by the reports of experts, who

21

described the scientific bases of USAPL's belief that persons with male physiology have a competitive advantage over persons with female physiology in a strength-based athletic competition. The president's affidavit is consistent with the reasons expressed in the e-mail messages that USAPL sent to Cooper in December 2018 and January 2019.

USAPL has satisfied its burden to produce evidence of a legitimate, non-discriminatory reason. Cooper's female gender identity co-exists with her male physiology. But, for the reasons stated above, her male physiology and her transgender status are separate concepts. In essence, USAPL has asserted that its decision was based on Cooper's "biological maleness," not the fact that she has a gender identity that is contrary to or "not traditionally associated with" her biological maleness. *See* Minn. Stat. § 363A.03, subd. 44 (2018). Furthermore, USAPL's president stated in his affidavit that a transgender woman who transitioned *before* puberty would not have been excluded from the women's division. He also stated in both his affidavit and his deposition testimony that Cooper would have been allowed to compete in the men's division of USAPL's competitions. A reasonable fact-finder could consider this evidence and find that USAPL did not exclude Cooper because of her transgender status.[7]

_____

[7]Cooper contends that, at the time of its decision, USAPL did not know whether she had experienced puberty as a male. In its reply brief, USAPL asserts that Cooper's TUE application includes her date of birth and medical records showing the dates of her hormone replacement therapy. Those documents indicate that Cooper was 31 years old when she joined USAPL and that she had been treated for gender dysphoria within the previous five years. The record further reflects that Cooper transitioned in her 20s and that she legally changed her name in 2015 or 2016, when she was approximately 28 years old. Cooper does not deny that she transitioned after puberty. In any event, Cooper does not contend that USAPL did not actually believe that she experienced puberty as a male. A defendant's asserted non-discriminatory reason is not discriminatory simply because it is incorrect, so

Thus, USAPL has satisfied its burden to produce evidence of a legitimate, nondiscriminatory reason for its decision.

**3.**

At the third step of the *McDonnell Douglas* analysis, the burden shifts back to the plaintiff "to put forward sufficient evidence to demonstrate that the [defendant's] proffered explanation was pretextual." *Hansen*, 813 N.W.2d at 918. In the more typical situation in which a defendant has moved for summary judgment,

> the . . . plaintiff must put forth sufficient evidence for the trier of fact to infer that the [defendant's] proffered legitimate nondiscriminatory reason is not only pretext but that it is pretext for discrimination. In some cases, sufficient evidence may consist of only the plaintiff's prima facie case plus evidence that the [defendant's] proffered reason for its action is untrue. In other cases, more may be required. However, at all times the . . . plaintiff retains the burden of establishing that the defendant's conduct was based on unlawful discrimination.

*Hoover*, 632 N.W.2d at 546. Because we are reviewing a grant of a plaintiff's motion for summary judgment, the relevant question is whether USAPL's evidence of a non-discriminatory reason is sufficient to create a genuine issue of material fact as to whether USAPL excluded Cooper from the women's division of its competition "because of" her sexual orientation (*i.e.*, transgender status), which requires proof that Cooper's transgender status "actually motivated" USAPL's decision. *See LaPoint*, 892 N.W.2d at 513.

---

long as it was honestly and sincerely believed. *See, e.g.*, *Aromashodu*, 981 N.W.2d at 798; *Schaefer v. Cargill Kitchen Solutions, Inc.*, No. A16-0154, 2016 WL 6570240, *10 (Minn. App. Nov. 7, 2016); *see also Wilking v. County of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998) (applying federal law and MHRA).

23

For the reasons stated above, USAPL's evidence, when viewed in a light most favorable to USAPL, is sufficient to allow a fact-finder to find that USAPL excluded Cooper from the women's division of its competition because of her male physiology, not because of her sexual orientation (*i.e.*, transgender status).[8] Thus, there are genuine issues of material fact on Cooper's first and third claims, which allege discrimination based on sexual orientation (*i.e.*, transgender status).[9]

---

[8]USAPL does not seek an "exemption" from the MHRA's prohibition of discrimination based on sexual orientation. *See infra* C/D-6, 7. To the contrary, USAPL seeks a trial at which a fact-finder will resolve conflicting evidence and make a factual determination as to whether USAPL excluded Cooper from the women's division of its powerlifting competitions because of her sexual orientation (*i.e.*, transgender status).

[9]The difference between our conclusion and the district court's conclusion may be explained by several features of the district court's analysis. The district court set aside much of USAPL's relevant evidence. The district court did not mention the affidavit of USAPL's president and expressly stated that it was not considering USAPL's expert reports. The district court did not recognize that USAPL's reason for its decision—that Cooper has a male physiology—is a legitimate, non-discriminatory reason. The district court also reasoned that USAPL's "motives" are irrelevant, which is contrary to caselaw stating that, to establish a claim of discrimination under the MHRA, a plaintiff must prove that his or her protected status "actually motivated" the defendant's decision. *LaPoint*, 892 N.W.2d at 513. To discern USAPL's reason for its decision, the district court focused on a few internal USAPL e-mail messages, some of which were sent after Cooper's ineligibility had been determined. Four times the district court quoted a small part of a seven-sentence e-mail message ending in "Full stop," which was sent by USAPL's president after USAPL had determined that Cooper would be ineligible. The e-mail message was written in response to a question from a USAPL staff member about whether a different powerlifter (apparently a transgender man) was required to submit to a drug test before a competition. USAPL contends that the e-mail message is "a stray remark unrelated to the decisional process." *See Hansen*, 813 N.W.2d at 920 (stating that "statements by decisionmakers unrelated to the decisional process are insufficient to establish a prima facie case" (quotation omitted)).

**D.**

USAPL also argues that the district court erred by not applying *Goins v. West Group*, 635 N.W.2d 717 (Minn. 2001). In that case, the plaintiff was a transgender woman who alleged discrimination based on sexual orientation because her employer did not allow her to use the women's restrooms at her workplace. *Id.* at 720-23. The supreme court held that the plaintiff could not prove her case with direct evidence because "an employer's designation of employee restroom use based on biological gender is not sexual orientation discrimination in violation of the MHRA." *Id.* at 723. The supreme court also concluded that the plaintiff could not prove her case with circumstantial evidence because she failed to establish a *prima facie* case. *Id.* at 723-25.

In response, Cooper contends that *Goins*, which concerned a claim of discrimination in employment, does not apply to this case, which concerns claims of discrimination in public accommodations and in business. Cooper relies on *N.H. v. Anoka-Hennepin School District No. 11*, 950 N.W.2d 553 (Minn. App. 2020), in which we concluded that *Goins* does not apply to a claim of discrimination in education. *Id.* at 560-61. We reasoned in *N.H.* that *Goins* is not binding in the education context because the issue "actually presented and resolved" in *Goins* was different from the issue presented in *N.H. Id.* at 561 (quotation omitted).

Even though *Goins* concerned a claim of discrimination in employment, its reasoning tends to corroborate our conclusion that Cooper does not have direct evidence

of discrimination based on sexual orientation (*i.e.*, transgender status). *See supra* part I.B.[10]

But *Goins* has less value in informing our analysis of the fact-bound question of whether USAPL excluded Cooper from the women's division of its competitions because of her sexual orientation (*i.e.*, transgender status). That question is a question of fact, which must be determined based on the evidence in this case. *See LaPoint*, 892 N.W.2d at 514.

**E.**

In sum, because "reasonable persons might draw different legal conclusions from the evidence presented," there is a genuine issue of material fact that precludes summary judgment on Cooper's claims of discrimination based on sexual orientation (*i.e.*, transgender status). *See Henry*, 988 N.W.2d at 880 (quotation omitted). Thus, the district court erred by granting Cooper's motion for partial summary judgment on her first and third claims, which allege discrimination based on sexual orientation in a place of public accommodations and in business.

## II. Legitimate Business Purpose

We next consider USAPL's argument that the district court erred by granting Cooper's motion for partial summary judgment on her third and fourth claims, which allege discrimination in business. USAPL argues that the district court erred on the ground that there are genuine issues of material fact with respect to its statutory defense of a legitimate business purpose.

---

[10]At the time of *Goins*, the MHRA defined "sexual orientation" in the same way as the 2018 version of the act, which applies to this case. *Compare* Minn. Stat. § 363.01, subd. 41a (2000), *with* Minn. Stat. § 363A.03, subd. 44 (2018).

The MHRA provision on which Cooper's business-discrimination claims are based provides as follows:

> It is an unfair discriminatory practice for a person engaged in a trade or business or in the provision of a service:
>
> . . . .
>
> (3)    to intentionally refuse to do business with, to refuse to contract with, or to discriminate in the basic terms, conditions, or performance of the contract because of a person's race, national origin, color, sex, sexual orientation, or disability, *unless the alleged refusal or discrimination is because of a legitimate business purpose.*

Minn. Stat. § 363A.17(3) (emphasis added). USAPL's defense to Cooper's business-discrimination claims is based on the last clause of paragraph (3) of section 363A.17, which we have italicized above.

The MHRA does not define the phrase "legitimate business purpose." *See* Minn. Stat. § 363A.03. To our knowledge, the phrase has not been interpreted by the Minnesota appellate courts for purposes of section 363A.17(3) of the MHRA. In *Sigurdson v. Isanti County*, 386 N.W.2d 715 (Minn. 1986), the supreme court described the second step of the *McDonnell Douglas* analysis, which requires a defendant to produce evidence of a "legitimate, non-discriminatory reason for its actions," by stating that a district court should "look for evidence presented by the [defendant] that its actions were related to some legitimate business purpose." *Id.* at 720. That statement implies that the phrase "legitimate business purpose" is equivalent to the phrase "legitimate, non-discriminatory reason." If so, a defendant's proof of the statutory legitimate-business-purpose defense would allow the defendant to avoid liability even if a fact-finder found that the defendant's decision was

27

motivated by both the plaintiff's protected status and a legitimate business purpose. *Cf. Anderson v. Hunter, Keith, Marshall & Co., Inc.*, 417 N.W.2d 619, 623-27 (Minn. 1988) (holding in employment context that defendant may not avoid liability upon proof of "mixed motive" if defendant's decision was motived in part by plaintiff's protected status).

The district court reasoned that USAPL has no evidence of a legitimate business purpose because USAPL does not have a legitimate non-discriminatory reason for its decision. But we have concluded above that USAPL's asserted reason for its decision—that it excluded Cooper from the women's division of its competitions because she has male physiology, which would give her an unfair competitive advantage over athletes with female physiology—is a non-discriminatory reason. *See supra* part I. For essentially the same reasons as are stated above, we conclude that there is a genuine issue of material fact as to whether USAPL had a legitimate business purpose for its decision to exclude Cooper from the women's division of its competitions.

Thus, the district court erred by granting Cooper's motion for partial summary judgment on USAPL's legitimate-business-purpose defense to her third and fourth claims, which allege discrimination based on sexual orientation and sex in business.

### III. Aiding-and-Abetting Claim

By notice of related appeal, Cooper argues that the district court erred by granting USAPL's motion for summary judgment on her fifth claim, in which she alleges that USAPL-MN aided and abetted USAPL's alleged violations of the MHRA.

Cooper's aiding-and-abetting claim is based on the following provisions of the MHRA:

28

> It is an unfair discriminatory practice for any person:
>
> > (1) intentionally to aid, abet, incite, compel, or coerce a person to engage in any of the practices forbidden by this chapter;
>
> > . . . .
>
> > (3) to intentionally obstruct or prevent any person from complying with the provisions of this chapter, or any order issued thereunder, or to resist, prevent, impede, or interfere with the commissioner or any of the commissioner's employees or representatives in the performance of duty under this chapter.

Minn. Stat. § 363A.14. "[A] person is liable for aiding and abetting a violation of the MHRA when that person knows that another person's conduct constitutes a violation of the MHRA and 'gives substantial assistance or encouragement to the other so to conduct himself.'" *Matthews v. Eichorn Motors, Inc.*, 800 N.W.2d 823, 830 (Minn. App. 2011) (quoting Restatement (Second) of Torts § 876(b)).

The district court granted USAPL's motion for summary judgment on Cooper's aiding-and-abetting claim for the following reasons:

> USAPL MN is not an organization that had any separate existence or autonomy beyond USAPL. In other words, USAPL at all times remained responsible for its Minnesota actors' conduct. The Minnesota actors were not acting on behalf of an organization separate from USAPL. [The USAPL representative in Minnesota] and other persons taking actions in Minnesota were not aiding and abetting USAPL's violations of the MHRA because their actions were those of USAPL and not of a separate entity. Under these circumstances, aiding and abetting liability cannot occur.

Cooper contends in her brief that the district court erred on the ground that "there is no reason why an entity such as USAPL MN couldn't similarly be held responsible for

29

aiding and abetting discrimination within a larger organization like USAPL, to which it belongs." At oral argument, Cooper asserted that USAPL-MN aided and abetted USAPL by voting for an exclusionary policy in mid-2019, after she was excluded from the competitions in early 2019.

These arguments fail because Cooper has not shown that the district court erred by determining that USAPL-MN is not an "entity" or "organization." Cooper contends that USAPL's Minnesota representative testified in his deposition about a "state chapter" and a "state organization." But the representative actually testified that there is no such state-level entity, that "the only formally incorporated organization is USAPL," and that his role was to represent the USAPL members who lived in Minnesota. The Minnesota representative's testimony is consistent with the affidavit of USAPL's president, who stated that "USAPL operates on a national level as one organization, not state by state with multiple state organizations" and that USAPL's "policies and procedures—including the policy challenged in this lawsuit—are set at the national level, not on a state-by-state basis."

Cooper has not identified any evidence that contradicts the Minnesota representative's deposition testimony or the president's affidavit. Accordingly, Cooper has not identified a genuine issue of material fact as to whether there is a state-level organization known as USAPL-MN, whether some persons acted on behalf of USAPL-MN but not on behalf of USAPL, and whether any such persons took action on behalf of USAPL-MN to support or encourage the actions of USAPL that are challenged in this case.

30

Thus, the district court did not err by granting USAPL's motion for summary judgment on Cooper's fifth claim, which alleges aiding and abetting discrimination.

## IV. Injunctive Relief

We last address USAPL's argument that the district court erred by ordering injunctive relief. Specifically, USAPL argues that the district court erred by enjoining USAPL from excluding transgender female athletes from the women's division of its competitions, by requiring USAPL to submit a proposed new policy, by enjoining USAPL from holding competitions or selling memberships in Minnesota, and by making such orders before final judgment.

We need not consider or resolve these arguments. We have concluded that the district court erred by granting Cooper's motion for partial summary judgment with respect to her first, third, and fourth claims. *See supra* parts I & II. Accordingly, there is no determination of liability on any of Cooper's claims. Thus, there is no legal basis for injunctive relief.

## DECISION

The district court erred by granting Cooper's motion for partial summary judgment on her first and third claims, which allege discrimination based on sexual orientation in a place of public accommodation and in business, because there are genuine issues of material fact as to whether USAPL's decision to exclude Cooper from competing in the women's division of its competitions was motivated by her sexual orientation (*i.e.*, transgender status).

The district court erred by granting Cooper's motion for partial summary judgment on her third and fourth claims, which allege discrimination based on sexual orientation and sex in business, because there are genuine issues of material fact as to whether USAPL's decision is justified by a legitimate business purpose.

The district court did not err by granting USAPL's motion for summary judgment on Cooper's fifth claim, which alleges aiding and abetting discrimination by USAPL-MN, because there are no genuine issues of material fact as to the non-existence of such an entity.

In light of our decision that the district court erred by granting Cooper's motion for partial summary judgment on her first, third, and fourth claims, there is no legal basis for injunctive relief. We therefore reverse the district court's February 27, 2023 and April 11, 2023 orders for injunctive relief.

We remand the case to the district court for further proceedings consistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**

**FRISCH**, Judge (concurring in part, dissenting in part)

This matter involves undisputed direct evidence of public-accommodations discrimination. Appellant USA Powerlifting (USAPL) admits that it excluded respondent JayCee Cooper, a transgender woman, from eligibility to compete in powerlifting competitions in the women's division because of her protected transgender status. Minnesota law forbids the use of a protected status as a criterion for such an exclusion. There is no statutory exemption or other defense to liability for this form of discrimination in public accommodations. Because a reasonable fact-finder could only conclude that USAPL violated the Minnesota Human Rights Act (MHRA), Minn. Stat. §§ 363A.01-.44 (2018), the district court properly granted summary judgment in favor of Cooper on her public-accommodations transgender-discrimination claim and enjoined USAPL from continuing to engage in illegal discrimination. This is not a close case.

USAPL's own evidence establishes that it revoked Cooper's competition eligibility because of her transgender status.[1] Contemporaneous with its decision to exclude, USAPL informed Cooper that "[m]ale-to-female transgenders are not allowed to compete as females in our static strength sport as it is a direct competitive advantage." This is direct evidence of public-accommodations discrimination under the MHRA. Minn. Stat. § 363A.11, subd. 1 (prohibiting denial to any person "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation" because of a person's protected status); *Goins v. W. Grp.*, 635 N.W.2d

---

[1] Cooper uses the phrase "transgender status" in her brief to this court, and I therefore do the same.

717, 722 (Minn. 2001) (acknowledging that direct evidence of discriminatory motive exists when a statement or policy is discriminatory *on its face*); *Sigurdson v. Isanti County*, 386 N.W.2d 715, 720 (Minn. 1986) (explaining that direct evidence of discriminatory motive exists "where an employer announces he will not consider females for positions"). And USAPL admits that its policy is to exclude transgender athletes. In its brief to this court, USAPL concedes that "the USAPL transgender policy is '*facially discriminatory*' in the most generic sense of the term because it precludes transgender women from competing in the women's division." (Emphasis added.) USAPL also acknowledges in its brief to this court that the following statement from USAPL's president "simply summarizes the policy": "We do not allow male to female transgender athletes *at all*. *Full stop*." (Emphasis added.) It is therefore undisputed that USAPL denied Cooper the full and equal enjoyment of its services because of her protected transgender status.[2]

Notwithstanding the absence of any genuine dispute of material fact as to its discriminatory action, USAPL argues that summary judgment was improper because it presented evidence that it did not intend to discriminate against Cooper because of her transgender status and instead intended to exclude Cooper because the "biological maleness" of transgender women affords a competitive advantage. This proffered rationale does not make its action any less discriminatory under the plain and unambiguous terms of the MHRA and our caselaw for three primary reasons.

---

[2] Because Cooper established her discrimination claim through direct evidence, the *McDonnell Douglas* burden-shifting framework does not apply. That "framework applies on summary judgment when a plaintiff relies on circumstantial rather than direct evidence" of discrimination. *Henry v. Indep. Sch. Dist. No. 625*, 988 N.W.2d 868, 883 (Minn. 2023).

First, the stated rationale is still discriminatory based on transgender status. USAPL's stated rationale cannot be separated from the essence of the protected status of a transgender person because, as the legislature expressly recognized, biology is necessarily intertwined with a person's transgender status. Minn. Stat. § 363A.03, subd. 44. By defining sexual orientation as "having or being perceived as having a self-image or identity not traditionally associated with one's *biological maleness or femaleness*," the legislature anticipated—and prohibited—the consideration of biology to discriminate against transgender people. *Id.* (emphasis added).

Second, the stated rationale operates only to segregate people in a protected class and exclude them from enjoying USAPL's services. The supreme court has determined that the use of a protected class as a criterion to exclude is forbidden under the MHRA. *Kraft, Inc. v. State*, 284 N.W.2d 386, 388 (Minn. 1979) (holding that anti-nepotism policy denying full-time employment to individuals married to persons already employed full-time by the employer constitutes a discriminatory practice based on marital status within the meaning of the MHRA). Cooper's transgender status was a necessary and undisguisable reason for USAPL's decision to exclude, which is exactly what the MHRA outlaws.[3] And USAPL's assertion that it intended to exclude only a subset of transgender people does not make its policy any less discriminatory because the MHRA protects

---

[3] Although the *McDonnell Douglas* burden-shifting framework does not apply here, the result would be the same even if it did because USAPL's stated rationale is inextricably intertwined with Cooper's transgender status and is therefore not a legitimate and nondiscriminatory reason to exclude. *See Hansen v. Robert Half Int'l, Inc.*, 813 N.W.2d 906, 918 (Minn. 2012) (identifying burden to "articulate a legitimate and nondiscriminatory reason" for the adverse action).

Cooper individually from discrimination based on her transgender status. *See* Minn. Stat. § 363A.11 (deeming it an "unfair discriminatory practice" to "deny *any person*" full and equal enjoyment of public accommodations based on a protected status (emphasis added)); *cf. Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1740-41 (2020) (explaining that Title VII protects individuals rather than groups); *Henry*, 988 N.W.2d at 880 (explaining that Minnesota courts look to federal caselaw arising under Title VII in interpreting the MHRA). The MHRA and Minnesota caselaw prohibit USAPL from considering transgender status *at all* in a decision to exclude.[4] USAPL readily admitted during oral argument that the MHRA would plainly forbid USAPL's policy if it precluded competition by people of a certain race, or national origin, or religion. So, too, does the MHRA prohibit a policy of exclusion based on gender identity. The legislature did not establish a hierarchy among protected classes. Transgender people are no less protected by the MHRA than any other protected class of people.

Third, USAPL's stated rationale does not negate liability. Even assuming as true that USAPL was motivated in part by what it characterizes as nondiscriminatory factors, such an assumption does not shield USAPL from liability because the undisputed evidence establishes that USAPL was *also* motivated by discriminatory factors. That there may be

---

[4] USAPL's argument that a genuine dispute of material fact exists as to whether it acted with a discriminatory motive is likewise unavailing. A "finding of animus, in the sense of dislike or hostility, is not necessary for a forbidden criterion to actually motivate" a decision. *LaPoint v. Fam. Orthodontics, P.A.*, 892 N.W.2d 506, 517 (Minn. 2017) (quotation omitted). Even so, the record contains evidence of USAPL officials mocking, insulting, and dehumanizing both Cooper specifically and transgender people generally. I do not repeat this evidence of animus here as it is not necessary to the disposition of the legal issues presented to the court.

more than one reason for USAPL's decision is not a defense to liability when one of those reasons is discriminatory; Minnesota has expressly rejected the "mixed motive" doctrine, by which a party may avoid liability if it proves that it would have reached the same decision notwithstanding a discriminatory basis for its decision. *Anderson v. Hunter, Keith, Marshall & Co.*, 417 N.W.2d 619, 625 (Minn. 1988). That is because "the public policy of eradicating discrimination" is frustrated by denying a victim of discrimination the remedies afforded by the MHRA. *Id.* Therefore, even accepting USAPL's argument that it had a claimed nondiscriminatory rationale in excluding Cooper, USAPL is still liable because the undisputed evidence shows that USAPL *also* excluded Cooper from competition because she is transgender. *LaPoint*, 892 N.W.2d at 514 (emphasizing that a plaintiff "proves her case if she establishes that the protected characteristic actually motivated" the conduct (quotation omitted)). Summary judgment was proper because the undisputed facts establish that USAPL intended to discriminate and did discriminate against Cooper based on her protected transgender status. Minn. Stat. §§ 363A.03, subd. 44, .11.

The legislature has not established an exemption in the MHRA for this brand of discrimination. The legislature has created *other* exemptions from liability for public-accommodations discrimination. Most notably, Minn. Stat. § 363A.24, subd. 2, provides:

> The provisions of section 363A.11 *relating to sex*, do not apply to restricting membership on an athletic team or in a program or event to participants of one sex if the restriction is necessary to preserve the unique character of the team, program, or event and it would not substantially reduce comparable athletic opportunities for the other sex.

(Emphasis added.)  USAPL agrees that this exemption, by its express and unambiguous terms, applies only to claims of discrimination based on sex, which is separately defined in the MHRA and does not include gender identity.  Minn. Stat. § 363A.03, subd. 42.  The exemption does not apply to claims of discrimination based on any other protected class, including gender identity, formerly defined in the MHRA as an aspect of sexual orientation. *Compare* Minn. Stat. § 363A.03, subd. 44 (2018) (defining sexual orientation), *with* Minn. Stat. § 363A.03, subd. 50 (Supp. 2023) (defining gender identity).

USAPL argues that the exemption applies to its discriminatory action because its decision to exclude Cooper was based only on sex.  This argument is belied by USAPL's own admissions and the undisputed evidence establishing that USAPL's decision to exclude Cooper was *also* based on her transgender status, which is not subject to any statutory exemption.   Cooper's sex- and transgender-discrimination claims are not mutually exclusive;[5] Minnesota law does not prohibit an aggrieved party belonging to more than one protected class from asserting multiple claims of discrimination under the MHRA. *See, e.g.*, *Aromashodu v. Swarovski N. Am. Ltd.*, 981 N.W.2d 791, 796-98 (Minn. App. 2022) (holding that a Black and Muslim plaintiff had triable issues of fact on claims of public-accommodations discrimination based on her race and religion).

Alternatively, USAPL urges us to recognize an exemption for its discriminatory action because requiring the inclusion of transgender women in the women's powerlifting division creates an unfair competitive advantage.  It is true that USAPL produced expert

---

[5] Cooper has also asserted a sex-discrimination claim.  That claim is not the subject of this appeal and is currently pending before the district court.

reports supporting this position. But whether a claimed unfair competitive advantage should operate as a defense to the provisions relating to public-accommodations discrimination under the MHRA is a policy decision for the legislature, not the courts.[6] In contrast to the legislature's adoption of a "legitimate business purpose" defense to business discrimination in Minn. Stat. § 363A.17(3), the legislature did not provide for such a defense for claims of public-accommodations discrimination. If the legislature had intended to allow for such a defense to public-accommodations discrimination, it would have said so. It did not. And we cannot graft this defense into the public-accommodations provisions of the MHRA because doing so would "encroach upon the right of the legislature to enact law by writing into a statute what the legislature did not." *Pfeiffer v. Allina Health Sys.*, 851 N.W.2d 626, 638 (Minn. App. 2014) (quotation omitted) (citing *Hutchinson Tech., Inc. v. Comm'r of Revenue*, 698 N.W.2d 1, 12 (Minn. 2005)); *In re Petition of Minn. Power & Light Co.*, 435 N.W.2d 550, 557 (Minn. App. 1989) (explaining that we do not interpret statutes "to include language which is clearly not there"); *see also Rohmiller v. Hart*, 811 N.W.2d 585, 590-91 (Minn. 2012) (declining to add language to

---

[6] I appreciate the participation of, information furnished by, and public-policy arguments from the amici, who represent parties interested in this matter. But "our task in this case, like any other, is not to make legislative policy but to interpret and apply existing statutes." *RDNT, LLC v. City of Bloomington*, 861 N.W.2d 71, 77-78 n.5 (Minn. 2015); *Dahlin v. Kroening*, 796 N.W.2d 503, 508 (Minn. 2011) (considering competing public-policy arguments related to judgment renewals and holding that "policy-related issues are best left to the Legislature. When interpreting the statutes, it is our role to rely on what the Legislature intended over what may appear to be supported by public policy.").

the statute that the legislature did not include); *Laase v. 2007 Chevrolet Tahoe*, 776 N.W.2d 431, 438 (Minn. 2009) (refusing to rewrite statute).

Given the undisputed direct evidence of discrimination and entry of summary judgment in Cooper's favor, the district court properly enjoined USAPL from continuing to violate the MHRA. The district court afforded USAPL ample warning and multiple opportunities to amend its policy and practices to comport with the MHRA. When USAPL was either unable or unwilling to do so, the district court fulfilled its obligation under Minn. Stat. § 363A.33, subd. 6, by ordering appropriate relief that, in this case, enjoined USAPL from continuing to conduct business in Minnesota in violation of the MHRA. This action is expressly authorized, if not required, by the MHRA once a court determines that a defendant has engaged in an unfair discriminatory practice. Minn. Stat. § 363A.33, subd. 6; *see* Minn. Stat. § 363A.29, subd. 3 (directing that where a court finds that a party has engaged in an unfair discriminatory practice, the judge shall issue an order that the discriminating party "cease and desist from the unfair discriminatory practice" and "take such affirmative action" as the court determines "will effectuate the purposes of this chapter); *see also* Minn. Stat. § 363A.04 (directing that the MHRA shall be "construed liberally" to accomplish its purposes of eradiating illegal discrimination).

In sum, the district court properly granted summary judgment in Cooper's favor on her public-accommodations discrimination claim because there is no issue to be tried. To prove her claim, Cooper was required to show that USAPL denied her the full and equal enjoyment of its services because of her protected transgender status. USAPL concedes that it did so. Although USAPL argues that a fact-finder must determine whether its

discrimination was justified, this defense is not available under the MHRA and thus does not present an issue for trial. Cooper was therefore entitled to judgment as a matter of law on her public-accommodations transgender-discrimination claim based on the undisputed material facts. Accordingly, with respect to the district court's order granting summary judgment on Cooper's public-accommodations discrimination claim, I respectfully dissent from the opinion of the court because the undisputed direct evidence establishes that USAPL violated the MHRA by intending to exclude and then actually excluding Cooper from competition eligibility because she is a transgender person. I would therefore affirm the district court's decision to grant summary judgment and injunctive relief on Cooper's claim for transgender discrimination in public accommodations. I concur with the result reached by the court as to the remaining issues.